DECISION.
Following a bench trial in November 1997, defendant-appellant Tyrone Burrow was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), respectively. The counts were merged for the purposes of sentencing, and Burrow was sentenced to eight years of imprisonment. Burrow filed a motion for new trial that was denied by the trial court. Burrow then filed a motion for a delayed appeal, which was granted by this court.
The undisputed facts in this case are that Burrow moved into the Oakley Hotel, located in Cincinnati, Ohio, on August 6, 1997. The building containing several single sleeping rooms, which were rented on a weekly basis. James Milburn, a maintenance worker, and Robin Hall, the manager, lived together in an apartment located in the building. On August 9, 1997, around 11:00 PM, Milburn was beaten with a baseball bat and suffered injuries to his head that required surgery. While there is no question that Milburn was seriously injured, this case focuses on who assaulted him.
Both Milburn and Hall testified at trial that Burrow had caused Milburn's injuries. Milburn testified that sometime during the day of August 9, he had informed Burrow that he could no longer rent a room at the Oakley Hotel. Milburn recalled that, later in the evening, Burrow came to his apartment. The last thing Milburn recalled before waking up in the hospital was that he answered the door and that Burrow charged in and swung at him.
Hall testified that she was in the bedroom asleep during most of the incident, but that a thumping noise awoke her. Hall stated that she got out of bed, walked towards the hall, and found Milburn lying on the floor near the front door, covered in blood. Hall also testified that she observed Burrow standing over Milburn holding a baseball bat in the air. She then chased Burrow out of the apartment and called 911 for assistance.
A tape of the 911 call was admitted into evidence. The 911 tape indicated that Hall had in fact called 911 two times on August 9, starting around 11:33 PM. The first time she called, Hall requested assistance at her apartment because the victim was "bleeding all over the place." Hall stated that she did not know how the victim was injured, but that the attacker was still in the apartment. The operator referred to the victim as a female throughout the first conversation. Hall then called back, requesting an ambulance for an injured male, and stated that the injury was a result of domestic violence. On the tape, Hall again stated that she did not know how the victim was injured, but that the attacker was upstairs. During the second conversation, the operator referred to the victim as a male.
Officers Timothy Weber and John Nolan, who arrived at the scene following the 911 calls, testified that they had been summoned on a domestic-violence call. While there was some initial confusion over who was involved in the incident due to the 911 calls, the officers eventually ascertained, by questioning Milburn and Hall, that Milburn had been injured by Burrow, who rented a room upstairs.
Burrow also testified at trial. His testimony provided a different account of what occurred on August 9. Burrow testified that he went to Milburn's apartment around 10:00 PM to request a receipt of his rent payment. Burrow related that when he arrived at the apartment, Milburn was drunk and belligerent. According to Burrow, Milburn made racist comments towards him and attempted to hit him with a baseball bat. Burrow stated that he was able to escape and run upstairs towards his room. At the top of the stairs, Burrow found a brick and threw it at Milburn. Burrow testified that he then ran into his room and locked the door until the police arrived. Burrow denied hitting Milburn with the baseball bat.
Burrow raises six assignments of error, which we address in what we believe to be the most logical order.
In his fourth assignment of error, Burrow challenges the sufficiency of the evidence. Burrow also alleges that the trial court erred by denying his Crim.R. 29 motion for acquittal. In the fifth assignment of error, Burrow challenges the weight of the evidence. In support of both assignments, Burrow argues that the evidence presented at his trial failed to establish that he had assaulted Milburn. In essence, Burrow suggests that Hall was a victim of domestic violence, and that she may have been the attacker on the evening of August 9. Because Burrow relies on the same evidence to support his arguments, we address them together.
The relevant inquiry for reviewing the denial of a Crim.R. 29 motion is the same as the inquiry for sufficiency.[1] To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all of the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[2] To reverse on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3]
A new trial should be granted only in exceptional cases where the evidence weighs heavily against conviction.[4]
Although we agree with the trial court that the 911 operator's suggestive questioning caused some initial confusion about what had occurred at the apartment on the night of the incident, we cannot say that the evidence presented by the prosecution was insufficient to prove felonious assault. The elements of felonious assault under R.C.2903.11(A)(1) required the prosecution to prove that Burrow had caused serious physical harm to Milburn. The elements of felonious assault under R.C. 2903.11(A)(2) required the prosecution to prove that Burrow had caused or attempted to cause physical harm to Milburn by means of a deadly weapon or dangerous ordinance.
The prosecution presented evidence that Milburn was beaten on the head with a baseball bat and that he had suffered serious injuries to his head. The prosecution also presented evidence that Burrow had attacked Milburn by way of testimony from both Milburn and Hall, which was substantiated by Officers Weber and Nolan. While Burrow denied assaulting Milburn, we hold that the evidence was sufficient to prove the elements of felonious assault under both R.C. 2903.11(A)(1) and R.C.2903.11(A)(2).
Moreover, we are unconvinced that the trial court improperly weighed the evidence. The trial court apparently found the testimony of Milburn, Hall, and Officers Weber and Nolan to be more credible than the testimony of Burrow. Because the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact,[5]
we cannot say that, as a matter of law, the trial court improperly weighed the evidence. In this case, Burrow's conviction was appropriately supported by the evidence presented at trial. Accordingly, we overrule the fourth and fifth assignments of error.
In the sixth assignment of error, Burrow's appointed counsel raises a myriad of errors that he believes are not meritorious, but that Burrow maintains were prejudicial to him. While we are unable to treat this assignment alone as one presented pursuant to an Anders v. California[6]
brief, as suggested by counsel, we nevertheless review the alleged improprieties set forth in this assignment. Specifically, Burrow believes the following improprieties prejudiced him: (1) his trial counsel was ineffective before, during, and after the trial; (2) he was denied his right to a jury trial; (3) the trial court was biased; (4) the trial court erred in denying his motion for a new trial; (5) he was not advised of his right to a preliminary hearing or whether a plea bargain had been offered; and (6) he was denied due process by the mishandling of evidence and the failure of the police to investigate.
Having reviewed the record, we hold that these arguments are without merit. First, we are unpersuaded that the trial court erred in overruling the motion for a new trial. In the motion, Burrow argued that he should be afforded a new trial due to prosecutorial misconduct and ineffectiveness of trial counsel. "[A] defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic."[7] Based on the testimony of the victim and Hall, the two audiotapes, and the officers' corroborating testimony, we cannot say that Burrow was prejudiced by his counsel's decisions at trial or deprived of a fair trial. Moreover, there is simply no evidence that trial counsel was ineffective before the trial. Additionally, while it appears that the baseball bat should have been handled more carefully, as it was contaminated, we are unpersuaded, after reviewing the record, that Burrow was deprived of a fair trial in this respect.[8] Accordingly, we conclude that the trial court did not err in overruling the motion for new trial.
Additionally, we are unconvinced that the trial court acted prejudicially by finding Hall's testimony to be credible, as we have already determined that it was within the province of the trial court to give credence to the testimony, and that the trial court did not err in that respect. Finally, there is no evidence, aside from Burrow's bald assertion in this appeal, that he was not advised of his right to a preliminary hearing or offered a plea bargain, that he was denied his right to a jury trial, or that trial counsel was ineffective after the trial. Without more, these arguments are feckless. Given that, we overrule the sixth assignment of error.
In the first assignment of error, Burrow challenges the imposition of the maximum sentence. In the second assignment of error, Burrow alleges that the trial court erred by failing to consider appropriate sentencing factors and by failing to make certain sentencing findings, as required under R.C. 2929.12, 2929.13, and 2929.14(B), before imposing the sentence. Because these assignments raise issues related to sentencing, we address them in the aggregate.
For sentencing on a second-degree felony, there is a presumption in favor of a prison term.[9] A prison term of two to eight years may be imposed for a second-degree felony.[10] The trial court must impose the shortest prison sentence on an offender who has not been previously sentenced to prison, unless the court finds that to do so would demean the seriousness of the offense or not adequately protect the public from future crime by the offender or others.[11] When setting the term of the sentence, the court must consider the seriousness and recidivism factors under R.C. 2929.12. Further, pursuant to R.C. 2929.14(C), when imposing a maximum sentence, the court must find one of the following: (1) that the offender committed the worst form of the offense, (2) that the offender poses the greatest likelihood of recidivism, (3) that the offender is a repeat violent offender, or (4) that the offender is a major drug offender.[12] In addition to making a finding under R.C.2929.14(C), the court must also give the reasons for imposing the maximum prison term.[13]
When imposing the prison term here, the trial court preliminarily noted that Burrow had been found guilty of two second-degree felonies, and that they would be merged for the purposes of sentencing. The court further noted that because Burrow had been found guilty of a second-degree felony, there was a presumption in favor of a prison term. The court then stated the following when imposing an eight-year prison term:
 All right. No question about the fact that this was a vicious, very vicious incident. I understand you are maintaining your innocence, and the Court was obligated to make the decision based upon what it believed to be the facts involved. And I did find you guilty. At this time, then, the Court is going to order the defendant confined to the Department of Corrections with the State of Ohio for eight years, and ordered to pay cost of prosecution.
 The trial court also filled out a felony sentencing worksheet, which indicated that the court had considered the seriousness and recidivism factors under R.C. 2929.12.
After reviewing the record, we hold that while the trial court did comply with the purposes and principles of sentencing under R.C. 2929.11
and 2929.12, there is no indication that the court considered the requisite R.C. 2929.14 factors when imposing the sentence. First, the trial court erred in imposing more than the minimum term of two years. It is unclear from the presentence-investigation report whether Burrow had previously served a prison term.[14] Without more, we must assume that Burrow had not previously served a prison term. Given this, the trial court erred in imposing more than the minimum term by failing to make the requisite findings under R.C. 2929.14(B). Second, the court further erred in imposing the maximum sentence of eight years because it did not make findings or give reasons for imposing such a sentence, as required under R.C. 2929.14(C) and 2929.19(B)(2)(d). As a result, we sustain Burrow's first and second assignment of errors to the extent that they challenge the imposition of more than the minimum prison term and the imposition of the maximum sentence, and we instruct the court to resentence Burrow and to make the proper findings, giving reasons for those findings where necessary.
In his third assignment, Burrow alleges that the trial court erred in failing to comply with the sentencing notification requirements. Essentially, Burrow contends that the trial court erred in failing to notify him that he was subject to "bad time" and "post-release control." Because we have already sustained the first and second assignments of error relating to the imposition of his sentence and instructed the court to resentence Burrow, this assignment of error is moot. But we do note that the Supreme Court of Ohio has recently addressed the constitutionality of both the "post-release control" and "bad time" statutes. In State ex rel. Bray v. Russell,[15] the court declared that the "bad time" provisions under R.C. 2967.11 are unconstitutional. In Woods v. Telb,[16] however, the court determined that the "post-release control" provisions under R.C. 2967.28 are constitutional. Because Burrow can no longer be subjected to the imposition of "bad time," the trial court on remand must notify Burrow that he is subject to the imposition of "post-release control," but that he is not subject to the imposition of "bad time."
In sum, we overrule the fourth, fifth, and sixth assignments of error, which challenge the findings of guilt, but we sustain the first and second assignments of error as they relate to sentencing. The third assignment of error is moot. The judgment of the court of common pleas is accordingly reversed in part, and this case is remanded for the correction of sentencing errors in accordance with this Decision and the law.
Hildebrandt, P.J., Gorman and Sundermann, JJ.
[1] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 263,381 N.E.2d 184, 185.
[2] See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[3] See State v. Thompkins, supra, at 387, 678 N.E.2d at 546-547.
[4] See id.
[5] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[6] (1967), 386 U.S. 738, 87 S.Ct. 1396.
[7] State v. Brown (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523,540.
[8] See State v. Maurer (1984), 15 Ohio St.3d 239, 266, 473 N.E.2d 768,792-793.
[9] See R.C. 2929.13(D). R.C. Chapter 2929 has been amended since Burrow was sentenced in December 1997, but the only substantive change affecting this case appears to be that the trial court must now impose a mandatory prison term for a violation under R.C. 2903.11. See R.C.2929.13(F)(4).
[10] R.C. 2929.14(A)(2).
[11] See R.C. 2929.14(B).
[12] See R.C. 2929.14(C).
[13] See R.C. 2929.19(B)(2)(d); State v. Edmonson (1999),86 Ohio St.3d 324, 328-329, 715 N.E.2d 131, 135.
[14] Burrow was previously confined for disorderly conduct; however, it is unclear from the record whether that confinement was in a prison.
[15] (2000), 89 Ohio St.3d 132, 729 N.E.2d 359.
[16] (2000), 89 Ohio St.3d 504, 733 N.E.2d 1103.