OPINION
Joey McBride appeals from his conviction and sentence for rape of a child under the age of thirteen, in violation of R.C. 2907.02(A)(1)(b).
McBride was indicted on April 6, 1999, and initially entered a plea of not guilty. Subsequently, McBride changed the plea to not guilty by reason of insanity, and the trial court ordered psychological evaluation to determine McBride's competency to stand trial. After two psychological evaluations, McBride was deemed competent to stand trial.
On September 7, 1999, McBride entered a plea of guilty to statutory rape. The trial court accepted his plea and sentenced McBride to five years in prison. From his conviction and sentence, McBride appeals.
McBride presents four assignments of error. We will address them in turn.
 FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S GUILTY PLEA
McBride argues that the trial court failed to follow the requirements of Crim.R. 11(C)(2) during the plea colloquy.
Ohio Crim.R. 11(C) was adopted to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review. State v. Nero (1990), 56 Ohio St.3d 106. Crim.R. 11(C) reads in pertinent part:
 (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
 (a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.
 (b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.
 (c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.
The trial judge is not required to literally comply with the provisions of Crim.R. 11(C), but rather "substantial compliance" with the rule is sufficient. Nero, supra (citing State v. Stewart (1977), 51 Ohio St.2d 86) . "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Id. at 108 (citing Stewart, supra; State v. Carter (1979), 60 Ohio St.2d 34, 38, certiorari denied (1980), 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789).
"Furthermore, a defendant who challenges a guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect." Nero, supra at 108 (citing Stewart, supra,51 Ohio St.2d at 93; Crim.R. 52(A)). "The test is whether the plea would have otherwise been made." Id.
In State v. Blair (1998), 128 Ohio App.3d 435, we found that where a defendant was not informed of the elements that the state would have had to prove in order to convict him, a defendant's mere affirmative responses to the question of whether he understood the nature of the charge against him is insufficient to satisfy "substantial compliance" with Crim.R. 11 (C)(2).
Relying on Blair, McBride argues that the trial court failed to follow Crim.R. 11(C)(2)(a)(b). More specifically, McBride argues that the trial court failed to ensure that his plea was voluntarily made, that he understood the nature of the charges against him, and that he understood the effect of a guilty plea.
Appellant's brief recites a few pieces of the transcript of the plea hearing that could lead one to question McBride's voluntariness and his understanding of the nature of the plea. It is clear from a thorough review of the record, however, that the trial judge complied with Crim.R. 11(C)(2) almost to the letter. Furthermore, we would like to remind counsel that taking small pieces from a document out of context to suit a particular argument, here one six-line excerpt and two four-line excerpts from a twenty-page transcript borders on a purposeful deception of the court.
Contrary to McBride's assertion, the record clearly demonstrates that the trial judge followed Crim.R. 11(C)(2). For example, the following excerpt will demonstrate that McBride offered the plea voluntarily, and that he understood the nature of the charge, pursuant to Crim.R. 11(C)(2)(a):
 JUDGE HALL: Have you understand (sic) what your attorney has explained to you about this case?
MR. McBRIDE: Yeah, a little bit. Pretty much.
 JUDGE HALL: Is there anything that you don't understand about it or any questions that you have about it that you want to ask the Court?
 MR. McBRIDE: No, I'm just fed up pretty much with, uh . . . me not — for not asking how old she was for one. And me — `cause her dad was beating her and sexually abusin' her before she moved in with me.
JUDGE HALL: Well, I'm not getting the facts yet . . .
MR. McBRIDE: I'm just sayin' . . .
 JUDGE HALL: . . . I want to make sure that you understand what you're doing today.
MR. McBRIDE: Yeah, I understand.
JUDGE HALL: Are you under the influence of any drug . . .
MR. McBRIDE: No, I'm not.
JUDGE HALL: . . . alcohol or any medication?
MR. McBRIDE: No.
 JUDGE HALL: Do you have any physical or mental disabilities?
 MR. McBRIDE: Uh . . . I got a hyper-reactive (sic) problem, behavior disorder and attention deficit.
 JUDGE HALL: Is there anything about that that would prevent you from knowing what's going on here today?
MR. McBRIDE: [Nodding Negatively]
 JUDGE HALL: You have to speak up. We can't get you on the record if you don't speak to us.
MR. McBRIDE: No.
 JUDGE HALL: If any time while I'm going through this, if you don't understand what's going on or you have any questions, will you ask it?
MR. McBRIDE: Yeah.
 JUDGE HALL: In order to have a plea before this Court it has to be done voluntarily. Are you entering a plea or do you intend . . .
MR. McBRIDE: I'm entering a plea.
JUDGE HALL: What's that?
MR. McBRIDE: I'm entering a plea.
JUDGE HALL: Are you doing it voluntarily?
MR. McBRIDE: Yeah, voluntarily.
JUDGE HALL: Are you doing it by yourself?
MR. McBRIDE: Yeah.
JUDGE HALL: Nobody's forced you . . .
MR. McBRIDE: Nope.
JUDGE HALL: . . . into anything today?
 MR. McBRIDE: Nope. I did that, too; I been sittin' there six months.
JUDGE HALL: Has anybody made any promises to you . . .
MR. McBRIDE: No.
JUDGE HALL: . . . to enter a plea today?
 MR. McBRIDE: Nope. (T. p. 8-11).
* * *
JUDGE HALL: Can we have a reading of the Charge, please?
 MS. JONES [Prosecutor]: Yes, Your Honor. Had this case gone to trial, the State would've shown beyond a reasonable doubt that in the County of Montgomery and State of Ohio, this Defendant, Joey McBride, on or about the 26th day of March, 1999, did engage in sexual conduct with another that being Amber Staup, not his spouse, less than thirteen years of age, whether he knew her age or not, contrary to the form of the Statute.
JUDGE HALL: Did you understand that Mr. McBride?
MR. McBRIDE: Huh?
JUDGE HALL: Did you understand what she had read?
MR. McBRIDE: Yeah, I understood.
 JUDGE HALL: Is there anything about the nature of the charge that you don't understand?
 MR. McBRIDE: What's the nature of the charge? What do you mean?
 JUDGE HALL: About what the charge means, what it accuses you of having done? Anything about that that you don't understand?
MR. McBRIDE: Not really.
 JUDGE HALL: Do you understand that the maximum penalty that you could receive would be a prison term of three all the way up to . . .
MR. McBRIDE: Ten.
JUDGE HALL: . . . ten years . . .
MR. McBRIDE: Yeah, I understand that.
 JUDGE HALL: You also understand that the maximum fine that you could receive could be twenty thousand dollars?
MR. McBRIDE: I understand that.
 JUDGE HALL: Do you understand that you are not eligible for community control or probation in this case?
 MR. McBRIDE: Yeah, I understand that. (T. p. 12-14).
 Second, it is clear from the transcript from the plea hearing that McBride understood the effect of the guilty plea, pursuant to Crim.R. 11(C)(2)(b):
 JUDGE HALL: Mr. McBride, you understand that a Guilty Plea is an admission of the facts that were read by the Prosecutor?
MR. McBRIDE: Yes.
 JUDGE HALL: And do you understand that if you make a plea, and I accept that plea, that the Court can proceed to judgment . . .
MR. McBRIDE: Yes, sir.
JUDGE HALL: . . . and set the case for sentencing?
MR. McBRIDE: Yes, sir.
(T. p. 16).
We conclude that the record demonstrates substantial, if not literal, compliance by the trial court with Crim.R. 11(C)(2). The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT AFFORDING APPELLANT OR HIS TRIAL COUNSEL AN OPPORTUNITY TO SPEAK AT SENTENCING
Crim.R. 32(A)(1) requires a trial court to "[a]fford counsel opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The record demonstrates that the trial court did not afford McBride an opportunity to make a statement prior to sentencing. However, we find this error to be harmless as McBride has failed to demonstrate how he was prejudiced by the trial court's omission.
In a pair of recent cases, the Ohio Supreme Court found that where "the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error." State v. Campbell (2000), 90 Ohio St.3d 320, 326. See also State v. Green (2000), 90 Ohio St.3d 352. The court explicitly found that the waiver doctrine was inapplicable; in other words, a defendant cannot waive his right of allocution by failing to object to its denial. Campbell, supra, 90 Ohio St.3d at 324-25.
The invited error doctrine provides that a party cannot take advantage of an error that he invited or induced the trial court to commit. State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections (1997), 80 Ohio St.3d 176,181. Crim.R. 52(A), "Harmless Error," provides that "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." A trial court's error is harmless error if, beyond a reasonable doubt, the error does not prejudice the party complaining of it. State v. Brown (1992), 65 Ohio St.3d 483 (citing Chapman v. California (1967), 386 U.S. 12, 87 S.Ct. 824, 17 L.Ed.2d 705).
In State v. Myers (Feb. 12, 1999), Greene App. No. 96 CA 38, unreported, we held that a trial court's failure to afford a defendant his right of allocution is harmless error unless the defendant comes forward with specific information that he would have presented to the trial court had he been given the opportunity, information which could have mitigated the offense in relation to the punishment the court could impose. It is only through a defendant's demonstration that he suffered prejudice, by stating what he would have told the court, that we can find that the error affected his "substantial rights." See Crim.R. 52(A). Failure to demonstrate prejudice renders the error harmless.
McBride has not informed us what he would have told the trial court had he been given the opportunity. Therefore, we have no way of knowing what prejudice, if any, he suffered as a result of the trial court's omissions. Because McBride has failed to demonstrate what prejudice he suffered as a result of this error, the error must be deemed harmless. Brown, supra. The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN INCLUDING "BAD TIME" IN ITS SENTENCING ENTRY
The trial court advised McBride that the parole board could sentence him to extra "bad time" for offenses committed while in jail. McBride correctly points out that, since his sentence was imposed, "bad time" added to a prisoner's term by a parole board has been found to be violative of the doctrine of the separation of powers and is therefore unconstitutional. State ex rel. Bray v. Russell (2000), 89 Ohio St.3d 132. McBride argues that he should be re-sentenced because his sentencing entry is flawed due to the trial court's advisory regarding "bad time."
An advisory about the possibility that a defendant could be sentenced to "bad time" for offenses committed while in jail is not part of the sentence. Woods v. Telb (2000), 89 Ohio St.3d 504. Bad time is an additional sentence that, until the Bray decision, could have been levied against McBride for crimes committed while incarcerated. After the Bray decision, it would be unconstitutional for the parole board to sentence McBride to additional bad time for crimes committed while incarcerated. McBride's sentence is not unlawful or invalid because it merely mentioned that he could have been subject to bad time.
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DETERMINING APPELLANT TO BE A SEXUALLY ORIENTED OFFENDER AND IMPOSING REGISTRATION REQUIREMENTS ON APPELLANT AS A SEXUALLY ORIENTED OFFENDER.
McBride was found to be a sexually-oriented offender pursuant to R.C.2950.01(D), and is therefore subject to registration requirements. McBride argues that R.C. 2950 is unconstitutional on a number of grounds. However, as McBride acknowledges, each of these arguments has been rejected by the Ohio Supreme Court. See State v. Cook (1998),83 Ohio St.3d 404; State v. Williams (2000), 88 Ohio St.3d 513. Therefore, we must reject McBride's arguments as well.
The fourth assignment of error is overruled.
 Conclusion
Having overruled each assignment of error presented, we will affirm the judgment from which this appeal was taken.