OPINION.
A jury found appellant Reno Lattimore guilty of breaking and entering in violation of R.C. 2911.13(A), a fifth-degree felony, rioting in violation of R.C. 2917.03(B), a first-degree misdemeanor, and falsification in violation of R.C. 2921.13(A)(3), also a first-degree misdemeanor. The trial court had instructed the jury on the offenses of both aggravated rioting under R.C. 2917.02(A)(1) and rioting under R.C.2917.03(A)(1). The jury's verdict form stated that the jury had found Lattimore not guilty of "Aggravated Riot, 2917.02(A)(1) R.C. as charged in the indictment, but guilty of the lesser offense of Riot, 2917.03(B) R.C." The trial court's sentencing entry wrongly indicated that Lattimore had been found guilty of violating "R.C. 2917.02(A)(1)." But then the entry described R.C. 2917.02(A)(1) as "riot," a misdemeanor.
The trial court sentenced Lattimore to one year in prison on the felony count and to six months of local incarceration on each of the two misdemeanor counts. The court ordered the two misdemeanor sentences to be served consecutively, but they were made concurrent with the felony sentence.
On appeal, Lattimore raises five assignments of error, alleging that the trial court erred by (1) prohibiting his counsel from exploring racial bias during the voir dire of prospective jurors; (2) refusing to instruct the jury on the lesser-included offense of disorderly conduct; (3) failing to follow the sentencing guidelines when imposing his sentences; (4) denying his Crim.R. 29 motion for acquittal; and (5) allowing his conviction against the weight of the evidence.
 I. Discrepancies in the Verdict Form and the Sentencing Entry As a preliminary matter, we must address the internal discrepancies within the sentencing entry and the discrepancies among the jury's verdict, the jury instructions and the sentencing entry. We start with the jury's verdict form. We must determine whether the verdict form was such that the jury's verdict must be declared void. The Ohio Supreme Court has held that "[j]ury verdicts in criminal cases are to have reasonable constructions and are not to be declared void unless from necessity originating in doubt of their import or irresponsiveness to the issue submitted, or unless they show a manifest tendency to work injustice."[1] The verdict form in this case stated that the jury had found Lattimore not guilty of aggravated rioting, "but guilty of the lesser offense of riot, 2917.03(B) R.C."
The record demonstrates that the jury was correctly instructed on the offense of rioting under R.C. 2917.03(A)(1) and that the jury was polled as to its verdict. The evidence presented to the jury was consistent with the offense as defined under R.C. 2917.03(A)(1), but inconsistent with its definition under R.C. 2917.03(B). Further, rioting was the least degree of the offense charged in the indictment aggravated rioting.[2] Because the trial court adequately advised the jury of its responsibility under R.C. 2917.03(A)(1), we conclude that the reference to the wrong statutory subsection did not void the jury s verdict.[3]
We also conclude that the trial court's internally inconsistent sentencing entry is a correctible clerical error. The entry correctly states the name of the offense, rioting, as well as the fact that rioting is a misdemeanor. The record is clear that the while the jury was instructed on aggravated rioting, it was also instructed on rioting. The jury found Lattimore not guilty of aggravated rioting and guilty of rioting. The trial court's citation to the incorrect Revised Code section was a clerical mistake, albeit one that should not have happened.
Crim.R. 36 allows for the correction at any time of clerical mistakes and errors due to oversight or omission by the court. Therefore, we must remand this case to the trial court to correct the typographical error in its sentencing entry.
 II. The Looting of Deveroes
Cincinnati Police Officers Donald Meece and Mark Schildmeyer were dispatched to a Deveroes store at approximately 2:00 AM. When they arrived, the officers observed several people entering and leaving the store through the broken windows and doors and carrying merchandise from the store. These people were not arrested because the officers believed that the darkness and the number of people made it dangerous to do so. Other people were yelling warnings that the police had arrived. Cincinnati Police Officers Jason Lobenthal and Jeff Smallwood arrived at Deveroes in response to a call for assistance from Officers Meece and Schildmeyer.
After chasing away most of the people, the officers entered the store. Officer Schildmeyer said that the store looked like it had been struck by a tornado. They saw at least two men and one woman in the store. After struggling with the men, they were able to subdue and arrest the three people. (The two men were the defendants tried with Lattimore.) Ultimately, seven or eight persons were apprehended in the store.
When Meese and the other officers were clearing the area, Meece discovered Lattimore hiding on a shelf in a back storage closet. Lattimore did not come down from the shelf until the officer threatened to use his beanbag gun. Lattimore was not seen with any merchandise in his possession.
After his arrest, Lattimore was placed in Officer Lobenthal's cruiser. The officer asked Lattimore for his name and social security number. When the officer entered the information in his mobile data terminal, the name Lattimore gave did not match the social security number. He repeated his request for identification, and Lattimore gave him the same name and social security number. At this point, Officer Lobenthal realized that the information was false. After several more failed attempts to get Lattimore's name and social security number, Officer Lobenthal saw Lattimore's first name tattooed on his neck and recognized it from a warrant that he had signed the previous week. Lattimore finally gave the officer the correct information.
Brian Edmonson, the manager of Deveroes, testified that the store had closed three hours early on the night of the looting. He described the store at that time as normal. In response to a telephone call from an employee, he returned to the store at midnight. He found the glass on the entrance doors broken and thirty percent of the merchandise stolen. The windows were not broken at that time. He left for his own safety. When he returned at 7:00 AM the next day, almost all the merchandise had been taken. He reported losses of approximately $131,000.
 III. Voir Dire Questions on Racial Bias
In his first assignment, Lattimore claims that he was foreclosed from examining prospective jurors about racial bias toward him based on the assertion that "he's a young, black male accused of a crime, particularly looting a place of business during the riots." He specifically points to the following question that his counsel attempted to pose to a prospective juror: "If you were walking down the street in your neighborhood and walking the same side of the street and you see three black teenagers wearing what looks like baggie clothing and pushing each other * * *." At that point, the court interrupted to say that Lattimore's counsel was getting into an area outside the scope of voir dire. When counsel explained that the question reflected preconceptions, the court responded, "I'm telling you right now the court will not allow an answer. You are getting into opinions and feelings. The only purpose here is can you render a fair and impartial verdict based upon the law and the evidence in this court, and will you put aside all bias, prejudice, and sympathies out of your mind and decide this case only on the law and the evidence."
Counsel for one of the other defendants explored the issue by asking several prospective jurors whether the fact that the defendants were African-Americans would affect their fairness and impartiality. He also asked the prospective jurors whether the television depiction of African-American males as being primarily those involved in the April riots created a preconceived notion about African-American males or would prevent the jurors from being objective. The jurors who responded stated that they would not be biased by the defendants' race or the media's coverage.
In State v. Jones,[4] this court held that a trial court abuses its discretion so as to commit reversible error when "a total preclusion or foreclosure of good faith voir dire examination as to biases is imposed."[5] We concluded that "[t]he trial court may limit questioning in this area, or undertake the examination itself, so long as the broad or general meaning of the inquiry is understood by prospective jurors in order to intelligently respond, but the court may not totally preclude or foreclose any and all questioning on the subject."[6]
The record in this case demonstrates that the trial court did not foreclose any and all questioning on bias toward Lattimore based on his race. While Lattimore's counsel did not pursue that line of questioning, one of the other defense attorneys did, and his questions involved all three defendants. Though perhaps it would have been better practice to allow a bit more leeway in this area, we overrule Lattimore's first assignment.
 IV. Jury Instruction on Lesser-Included Offense of Disorderly Conduct
In his second assignment, Lattimore argues that the jury should have been instructed on disorderly conduct, a lesser-included offense of aggravated rioting. Before instructing on a lesser-included offense, the trial court must first ascertain that the offense for which the instruction is requested is, in law, a lesser-included offense.[7] If it is, the court must then determine whether the evidence supports giving the instruction.[8] "If the trial court determines that it is possible under any reasonable view of the evidence for the jury to find the defendant not guilty of the greater offense and guilty of the lesser offense, then it must instruct the jury on the lesser-included offense."[9] To constitute a lesser-included offense of another, the offense must carry a lesser penalty; the greater offense, as statutorily defined, cannot be committed without also committing the lesser offense, as statutorily defined; and the greater offense has some element that is not required to prove the lesser offense.[10]
Disorderly conduct is a minor misdemeanor.[11] Aggravated rioting is a felony.[12] Aggravated rioting cannot be committed without also committing disorderly conduct, as statutorily defined.[13] Aggravated rioting has elements that must be proven that are not required to prove disorderly conduct, such as participation with four or more persons[14]
and, pertinent to the charge in this case, the purpose to commit a felony.[15] Thus, we conclude that disorderly conduct is, in law, a lesser-included offense of aggravated rioting.[16]
Our next step is to determine whether the facts of this case warranted the instruction on disorderly conduct as a lesser-included offense. When Officers Meese and Schildmeyer pulled up to the Deveroes store at 2:00 AM., they saw at least fifteen people carrying merchandise from the store and others yelling that the police had arrived. When the officers entered the store, they saw at least five people. Lattimore was hiding on a shelf in a storage area inside the store. He initially refused to come out of hiding. Scattered around the building were merchandise, bags, and boxes. There was no evidence of any lawful reason for Lattimore's presence in the building. On the other hand, there was no evidence that Lattimore possessed any merchandise or that he had destroyed any part of the building or anything in it.
Disorderly conduct is defined, in pertinent part, as recklessly causing inconvenience, annoyance, or alarm to another by threatening harm to persons or property or engaging in violent or turbulent behavior, or by "[c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender."[17]
Aggravated rioting is defined as participating with four or more persons in a course of disorderly conduct with the purpose to commit or facilitate a felony.[18] The felony in this case was breaking and entering.
We are not persuaded that it was possible, under any reasonable view of the evidence, for the jury to have found Lattimore not guilty of aggravated rioting but guilty of disorderly conduct. Therefore, we find no error in the trial court's refusal to instruct the jury on disorderly conduct as a lesser-included offense of aggravated rioting.
 V. Sentencing Issues
In his third assignment, Lattimore challenges his sentence. He argues that the trial court erred by not following the statutory guidelines when imposing the maximum sentence for breaking and entering. He also argues that the state failed to notify him at the sentencing hearing about "bad time" and post-release control under R.C. 2929.19(B).
Lattimore was found guilty of breaking and entering, a fifth-degree felony. Before imposing a prison sentence, the trial court had to find one of the enumerated factors under R.C. 2929.13(B)(1). On the felony-sentencing worksheet, the trial court indicated that Lattimore, in committing the offense of breaking and entering, had either attempted to cause or made an actual threat of physical harm to a person and had previously been convicted of an offense that had caused physical harm to a person[19] or had attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.[20] Which factor the court specifically chose to rely on is unclear because the felony-sentencing worksheet contained fewer lines to place checkmarks than there were listed factors. Consequently, the lines did not correspond to the factors. The trial court also found that Lattimore had previously served a prison term.[21]
The record fails to support any finding that, in committing breaking and entering, Lattimore attempted or actually threatened physical harm to a person, with or without a deadly weapon. The trial court erred in making this finding. But the record does support the trial court's finding that Lattimore had been in prison before.
The trial court also found that Lattimore was not amenable to community control and that prison was consistent with the principles and purposes of felony sentencing.[22] Thus, the trial court complied with the sentencing guidelines before imposing a prison sentence.
The trial court, before it imposed the maximum sentence, was required to find that Lattimore either had committed the worst form of breaking and entering or posed the greatest likelihood of recidivism.[23] The trial court stated that the maximum sentence was "very light" compared to the devastation done to the store. While we question whether the facts of this case constituted a worst form of breaking and entering as the offense related specifically to Lattimore, we find no error in the trial court's finding that Lattimore posed the greatest likelihood of recidivism.
Lattimore has a criminal history. He was released from prison on February 15, 2001, and was arrested for the instant offense a mere two months later. The trial court pointed out the extensive criminal and juvenile records of Lattimore and the other two defendants, as well as their lack of remorse. It also indicated that Lattimore was on post-release control from prison when he committed the instant offense and that he had not been satisfactorily rehabilitated. Thus, we find no error in the imposition of the maximum sentence on Lattimore.
Lattimore also raises the issue of whether he received sufficient notification about bad time and post-release control. Contrary to Lattimore's assertion, the trial court should not have advised him of the possibility of "bad time." The Ohio Supreme Court has declared that to add "bad time" to a prison term for violations that occur during a term of imprisonment is unconstitutional as a violation of the separation-of-powers doctrine.[24]
R.C. 2929.19(B)(3) requires the trial court, if it imposes a prison term, to notify the offender that "the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison," if the offender is being sentenced for a fifth-degree felony.[25] It must also notify the offender that, if a period of supervision is imposed following his prison release and he violates that supervision or a condition of post-release control imposed under R.C. 2967.131, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed.[26]
The Ohio Supreme Court has held that, under "R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing * * * that post-release control is part of the defendant's sentence."[27] R.C.2967.28(C) mandates three years of post-release control for a fifth-degree felony if the parole board determines that post-release control is necessary.
The trial court failed to verbally notify Lattimore about the possibility of post-release control at the sentencing hearing. Lattimore's sentencing entry did state that Lattimore was subject to post-release control under R.C. 2967.28. Although a statement on a sentencing entry (presumably endorsed by the defendant), when coupled with a signed plea form, may constitute proper notification,[28] we are not convinced that Lattimore was properly notified in this case. R.C. 2929.19(B)(3)(d) clearly requires that the offender be notified. The Ohio Supreme Court has held that the notification must be given at sentencing.[29] There is no indication here that Lattimore ever saw the sentencing entry.
Further, under R.C. 2929.19(B)(3)(e), the trial court was required to notify Lattimore about the ramifications of violating post-release supervision or post-release-control sanctions, if imposed. The court did not do so.
Thus, we must remand this case so that the court can advise Lattimore under R.C. 2929.19(B)(3)(d) and (e). As explained by the Ninth Appellate District, "This court is mindful of the fact that many resources will be engaged for what seems a trivial matter. But mandatory terms in a sentencing statute are not trivial. Careful adherence to the sentencing statutes by the trial court will insure the preservation of judicial and executive resources."[30]
 VI. Crim.R. 29 Motion for Acquittal
Lattimore challenges the trial court's overruling of his Crim.R. 29 motion for acquittal. He contends that because (1) he was not found possessing any merchandise, and (2) the police testified that when they found him he was not acting disorderly, his motion for acquittal should have been granted. Our review of the denial of Lattimore's Crim.R. 29 motion requires us to determine whether the evidence "[wa]s such that reasonable minds [could have] reach[ed] different conclusions" as to whether the state had proved each material element of breaking and entering and aggravated rioting beyond a reasonable doubt.[31]
Breaking and entering occurs when a person, by force, stealth, or deception, trespasses in an unoccupied structure with the purpose to commit any theft offense as defined in R.C. 2913.01.[32] Stealth has been defined as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a [structure] of another without permission."[33]
Aggravated rioting occurs when a person participates with at least four others in a course of disorderly conduct with the purpose to commit or facilitate the commission of a felony.[34]
Here, the officers arrived at the Deveroes store and saw several people run outside the store with merchandise. They entered the building and found Lattimore and several others inside. Lattimore was hiding on a shelf. Surely, he was using "stealth" to remain on the premises and avoid detection. And the assertion that he did not break the doors and windows — that they were already broken by others — seems to us feckless. The evidence was such that reasonable minds could have reached different conclusions as to whether the state had proved breaking and entering and aggravated rioting. We overrule Lattimore's third assignment.
 VII. Manifest Weight of the Evidence
In his last assignment, Lattimore claims that his convictions for breaking and entering and rioting were against the manifest weight of the evidence. He argues that because the trial court found him guilty of breaking and entering and of rioting, but not guilty of aggravated rioting, the jury lost its way. Aggravated rioting and rioting contain essentially the same elements, but for one difference. To find Lattimore guilty of aggravated rioting, the jury had to find that Lattimore had acted with the purpose to commit or facilitate the commission of a felony in this case, breaking and entering. To find him guilty of rioting, the jury had to find that Lattimore had acted with the purpose to commit or facilitate the commission of a misdemeanor other than disorderly conduct in this case, criminal trespass.
Obviously, Lattimore is arguing that the jury's verdicts were inconsistent. But this does not necessarily mean that the jury lost its way. It may have reached the verdicts as a result of compromise or lenity. The Ohio Supreme Court has held that "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count."[35] This is true even where a verdict acquits on a predicate offense while convicting on the compound offense.[36] We have recognized that "[v]erdicts that are logically inconsistent will not provide the basis for the reversal on appeal of a conviction that is supported by the manifest weight of the evidence."[37] To hold otherwise would require us to speculate about or inquire into the jury's deliberations.[38]
We have reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses, and, in our view, the jury did not clearly lose its way in resolving conflicts in the evidence and create a manifest miscarriage of justice. Thus, we overrule Lattimore's last assignment.
 VIII. Conclusion
Accordingly, we affirm the trial court's judgment with respect to the findings of guilt. But we vacate Lattimore's sentence and remand this cause with instructions that the trial court notify Lattimore about (1) the potential for supervision under R.C. 2967.28 after he leaves prison, and (2) the ramifications of violating any period of post-release supervision or any condition of post-release control. We also order that the trial court correct Lattimore's sentence to reflect his conviction for rioting under R.C. 2917.03(A)(1).
Judgment affirmed in part, sentence vacated, and cause remanded forresentencing.
Sundermann and Winkler, JJ., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] See State v. McNicol (1944), 143 Ohio St. 39, 53 N.E.2d 808, paragraph two of the syllabus.
[2] See R.C. 2945.75(A)(2).
[3] See State v. Miller (Dec. 22, 2000), Lucas App. No. L-00-1018, unreported; State v. Tebcherani (Nov. 22, 2000), Summit App. No. 19535, unreported; State v. Martinez (Nov. 17, 1995), Lucas App. No. L-95-009, unreported.
[4] See State v. Jones (1984), 20 Ohio App.3d 331, 486 N.E.2d 179.
[5] See id. at 332, 486 N.E.2d at 180.
[6] See id.
[7] See State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553, unreported.
[8] See id.
[9] See id., citing State v. Davis (1983), 6 Ohio St.3d 91, 95,451 N.E.2d 772, 776.
[10] See State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus.
[11] R.C. 2917.11(E).
[12] R.C. 2917.02(C).
[13] R.C. 2917.02(A).
[14] R.C. 2917.02(A).
[15] R.C. 2917.02(A)(1).
[16] Cf. State v. Bonarrigo (1980), 62 Ohio St.2d 7, 402 N.E.2d 530;State v. Perdue (Jan. 11, 1989), Washington App. No. 87 CA 35, unreported (both cases assume, without comment, that disorderly conduct is a lesser-included offense of aggravated rioting). See, also, Gorman, Mestemaker, and Perry, Anderson's Ohio Criminal Practice and Procedure (7 Ed. 2001), Table of Lesser Included Offenses, at 93 (disorderly conduct is likely a lesser-included offense of aggravated rioting).
[17] See R.C. 2917.11(A)(1) and (5).
[18] R.C. 2917.02(A)(1).
[19] R.C. 2929.13(B)(1)(c).
[20] R.C. 2929.13(B)(1)(b).
[21] R.C. 2929.13(B)(1)(g).
[22] See R.C. 2929.13(B)(2)(a).
[23] See R.C. 2929.14(C).
[24] See State ex rel. Bray v. Russell (2000), 89 Ohio St.3d 132,729 N.E.2d 359.
[25] See R.C. 2929.19(B)(3)(d).
[26] See R.C. 2929.19(B)(3)(e).
[27] See Woods v. Telb (2000), 89 Ohio St.3d 504, 733 N.E.2d 1103, paragraph two of the syllabus.
[28] Woods v. Telb at 513, 733 N.E.2d at 1110 (signed plea form and sentencing entry indicated defendant advised of discretionary post-release control).
[29] See id. at 504, 733 N.E.2d at 1103, paragraph two of the syllabus.
[30] See State v. Martin (June 13, 2001), Summit App. No. C.A. 20292, unreported.
[31] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[32] R.C. 2911.13(A).
[33] See State v. Ward (1993), 85 Ohio App.3d 537, 540, 620 N.E.2d 168,170.
[34] See R.C. 2917.02(A)(1).
[35] See State v. Lovejoy (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112, paragraph one of the syllabus.
[36] See State v. Pies (Dec. 17, 1999), Hamilton App. Nos. C-990241 and C-990242, unreported, citing United States v. Powell (1984), 469 U.S. 57,65, 105 S.Ct. 471, 476-477.
[37] See State v. Parker (Apr. 26, 1995), Hamilton App. Nos. C-940097 and C-940126, unreported.
[38] See State v. Lovejoy at 445, 683 N.E.2d at 1116.