OPINION
[¶ 1] Defendant-appellant Daniel Tucci appeals from the judgment of the Mahoning County Common Pleas Court which was entered after he pled guilty to attempted burglary and was sentenced to a five-year maximum sentence. The issues raised on appeal concern whether the court engaged in a proper Crim.R. 11 colloquy at the plea hearing, whether the court failed to comply with the terms of the plea agreement, whether the plea was induced by an unkept promise and was thus involuntary, whether the court sufficiently discussed post-release control, and whether the court properly imposed the maximum sentence. For the following reasons, appellant's plea must be vacated due to the lack of proper disclosure of various pieces of information in accepting the plea. As such, this case is reversed and remanded for further proceedings.
 STATEMENT OF THE CASE [¶ 2] On May 3, 2001, appellant was indicted for burglary in violation of R.C. 2911.12(A)(1), a second degree felony. It was alleged that on March 11, 2001, appellant broke into his neighbor's house. Apparently, the neighbor was in the hospital at the time of the burglary, but his father was present during the burglary.
[¶ 3] On September 19, 2001, appellant entered into a plea agreement with the state whereby he pled guilty to a reduced charge of attempted burglary, a third degree felony. The state agreed to adopt the presentence investigation recommendation if favorable to appellant or to alternatively stand silent at sentencing. The plea was journalized the next day.
[¶ 4] A sentencing hearing was held on November 29, 2001. The court sentenced appellant to the maximum term of five years in prison. The sentence was journalized on December 6, 2001, and timely notice of appeal followed.
 ASSIGNMENT OF ERROR NUMBER ONE [¶ 5] Appellant's first assignment of error provides:
 [¶ 6] "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT INFORM DEFENDANT AS TO ALL HIS CONSTITUTIONAL RIGHTS HE WAS WAIVING BY ENTERING A PLEA OF GUILTY."
 [¶ 7] Pursuant to Crim.R. 11(C)(2)(c), the court shall not accept a plea of guilty in a felony case without first addressing the defendant personally and informing him and determining that he understands that by pleading, he is waiving the rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.
[¶ 8] Appellant admits that he was adequately informed about his right to a jury trial. However, he alleges that the court did not inform him of his right against self-incrimination, his right to confront his accusers, and his right to compulsory process. The state responds that the trial court substantially complied when it said the following at the plea hearing:
 [¶ 9] "The evidence presented would be brought before the court by the State of Ohio through the Prosecutor's Office which would include any police officers or any eyewitnesses to testify * * * The owner of the house would come in, say that you didn't have permission to be there, the police officers would come in, identify you as well as any other eyewitnesses. Once that evidence is presented, your attorney would present evidence on your behalf such as a defense it wasn't you, it wasn't in Mahoning County, or the house was not occupied. After the presentation of all the evidence, the jurors would consider the evidence, apply the law, and if all 12 of them agreed that you did burglarize this house or attempt to burglarize this house, all 12 of them would vote to find you guilty." (Tr. 5-6).
 [¶ 10] The state interprets this colloquy as sufficiently explaining the constitutional rights being waived by the plea entry. The state asks us to consider the totality of the circumstances to determine if he understood the rights he was waiving, noting that he went through some college and signed a written plea agreement which stated each constitutional right being waived. (Tr. 6, 14). The state also argues that appellant has failed to show prejudice because there is no indication that he would not have pled guilty had he been informed about the rights being waived.
[¶ 11] However, Crim.R. 11(C) has various elements, some constitutional and some non-constitutional. The United States Supreme Court first outlined three rights that must be revealed to the pleading defendant: the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers. Boykin v. Alabama
(1969), 39 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. The Ohio Supreme Court added the right to compel witnesses to testify by compulsory process. State v. Ballard (1981), 66 Ohio St.2d 473, 478, fn. 4. Although the trial court accepting a plea need not use the exact language of Crim.R. 11(C) even with regards to the constitutional rights, the court must advise the pleading defendant of each constitutional right. Id. at 479-481. The defendant must be "meaningfully informed" of each constitutional right personally by the judge; this means "in a manner reasonably intelligible to that defendant." Id. at 480 (finding compliance where the trial court did not rotely recite that the defendant had the right to a jury trial but where the court mentioned both a trial and a jury in its colloquy).
[¶ 12] The Supreme Court has applied a liberal substantial compliance test to the overall colloquy when non-constitutional rights are being reviewed. State v. Nero (1990), 56 Ohio St.3d 106, 108
(upholding the plea under the totality of the circumstances where the court violated Crim.R. 11[C][2][a] by failing to inform the defendant that he was ineligible for probation). However, this liberal substantial compliance is not applicable to the portion of the colloquy explaining the constitutional rights being waived. Boykin, 395 U.S. 238; State v.Sturm (1981), 66 Ohio St.2d 483, 494; Ballard, 66 Ohio St.2d at 480. Each of the four must be explained in a meaningful manner. Id.
[¶ 13] In Sturm, the Court reversed where the trial court failed to advise the defendant in any manner of the right to confront his accusers. In State v. Payne (Dec. 19, 2000), 7th Dist. No. 00521CA, this court reversed a plea where the record was devoid of any mention that the defendant was waiving the right to confront her accusers, the right to subpoena witnesses, or the right to claim her privilege against self-incrimination, noting that the failure to inform the defendant of a constitutional right requires reversal of the conviction and remand of the case. In accordance with the above case law, appellant's plea must be reversed and remanded.
[¶ 14] The state argues that the trial court meaningfully mentioned the right to confront one's accusers when it explained that the state and the defense will present evidence. Even if we were persuaded by the state's argument as to appellant's confrontation right, which we are not, the trial court's failure to disclose not one but two of the other four rights requires reversal. Moreover, the court's language cannot be construed to explain the right to subpoena witnesses by compulsory process. Hence, appellant's plea is vacated, and this case is reversed and remanded for further proceedings.
 ASSIGNMENT OF ERROR NUMBER TWO AND THREE [¶ 15] Appellant's second and third assignments of error are related and contend as follows:
 [¶ 16] "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO COMPLY WITH THE PLEA AGREEMENT."
 [¶ 17] "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS GIVEN A MAXIMUM SENTENCE CONTRARY TO THE PLEA BARGAIN AGREEMENT."
 [¶ 18] Although we are reversing on the first assignment of error, we must address these assignments because appellant alternatively urges specific performance of the plea agreement. Additionally, the issues are likely to recur on remand. Appellant argues that the plea agreement called for him to receive four years in prison so that he would be eligible for judicial release after eighteen months. He argues that by sentencing him to the five-year maximum sentence, the court breached the plea agreement. He states that his plea was involuntary as it was induced by a promise which was not kept.
[¶ 19] This argument focuses on the court's initial statement at the opening of the hearing, which noted that the defendant was pleading guilty and that "[i]n exchange for that, I understand that the potential sentence — the minimal sentence will be four years with judicial release after 18 months." (Tr. 2). The state responded that it "will adopt the recommendation in the PSI if it's favorable or be standing silent in the alternative." (Tr. 3). Defense counsel agreed that this was his understanding of the plea agreement.
[¶ 20] Thereafter, the court informed appellant that he "could be sentenced to up to five years incarceration." (Tr. 6). The court asked, "Did anybody promise you you would get anything less than five years?" Appellant responded in the negative. (Tr. 9). Later, the court again stated, "no one promised you you'd get probation or less than five years" at which time appellant acknowledged signing the plea agreement. (Tr. 14). This written plea agreement informs appellant of the maximum sentence and binds the state to its promise to either support any favorable recommendations in the presentence investigation report or to stand silent at sentencing. It mentions nothing about a four-year sentence.
[¶ 21] At the sentencing hearing, defense counsel asked the court "to impose a minimum sentence or at least a term of four years or less so as not to preclude my client from potential [judicial release]." (Tr. 11). The fact that this argument was presented further supports the holding that appellant knew that neither the prosecutor nor the court promised him a four year sentence.
[¶ 22] In reviewing the written plea agreement, the plea transcript, and the sentencing hearing, it is clear that appellant knew that the court could impose a maximum sentence of five years and that no one promised him anything less than five years. As such, there was no breach of the plea agreement or inducement to plead by a promise of a certain sentence. Appellant's second and third assignments of error are without merit.
 ASSIGNMENT OF ERROR NUMBER FOUR [¶ 23] Appellant's fourth assignment of error alleges:
 [¶ 24] "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS NOT INFORMED OF POST-RELEASE CONTROL."
 [¶ 25] Besides the Crim.R. 11 deficiencies discussed supra, appellant argues that certain other aspects of the court's disclosures were insufficient. He thus argues that his plea was not voluntary, knowing, or intelligent because he did not know, for instance, that he could be returned to prison after being released. Specifically, he contends that the trial court should have advised him according to R.C.2943.032(A) through (E). He also alleges a violation of R.C. 2929.19(B)(3) and cites to R.C. 2967.28.
[¶ 26] Prior to analyzing the disclosures concerning post-release control, we shall deal with appellant's assertion that the court failed to personally advise him of information set forth in R.C. 2943.032(A), (B), (C), and (D). Pursuant to R.C. 2943.032(A) through (D), the court must personally inform the defendant prior to accepting a guilty or no contest plea that if the court imposes a prison term, then the parole board can impose various punishments for crimes committed while imprisoned. These sections contain the required disclosures dealing with "bad time." Bad time was defined in R.C. 2967.11, which gave the parole board authority to extend sentences for crimes committed while incarcerated. Because R.C. 2967.11 and its creation of parole-board imposed "bad time" has been declared unconstitutional on the basis of separation of powers, the trial court properly failed to advise appellant of the details of "bad time." State ex rel. Bray v. Russell (2000),89 Ohio St.3d 132, 134-136. As such, this part of appellant's argument is without merit. We can now turn to an evaluation of the revelations regarding post-release control.
[¶ 27] Just after striking the "bad time" legislation as an unconstitutional violation of the separation of powers doctrine, the Supreme Court of Ohio held that the post-release control legislation does not violate the separation of powers doctrine. Woods v. Telb (2000),89 Ohio St.3d 504, 512. In Woods, the Supreme Court addressed R.C. 2967.28, which creates the notion of post-release control.
[¶ 28] R.C. 2967.28(B) provides that a sentence shall contain mandatory post-release control of five years for first degree felonies or felony sex offenses, three years for second degree felonies that are not felony sex offenses, and three years for third degree felonies that are not felony sex offenses but during which the offender threatened or caused physical harm. R.C. 2967.28(C) provides that a sentence for a third degree felony as in the case at bar (where it is not a sex offense and where the defendant did not cause or threaten physical harm) shall include a requirement that the offender be subject to a period of post-release control of up to three years if the parole board determines that a period of post-release control is necessary. If an offender violates a condition of post-release control, the parole board may impose a prison term as a post-release control sanction that does not exceed nine months, and the maximum cumulative prison term for all violations shall not exceed one-half of the stated prison term originally imposed as the offender's sentence. R.C. 2967.28(F)(3).
[¶ 29] The Supreme Court has interpreted R.C. 2967.28(B) and (C) as requiring the trial court to inform the offender at sentencing or at the plea hearing that post-release control is part of the offender's sentence. Woods, 89 Ohio St.3d at 513 (upholding the advisement where it was in the written plea agreement and the sentencing entry). However, the Supreme Court was only addressing R.C. 2967.28, which provides for each sentence to contain mandatory or discretionary post-release control for felony offenses. The Supreme Court was not faced with the issues surrounding R.C. 2929.19(B)(3) or 2943.032(E), both of which specifically require certain notifications regarding post-release control. Thus, although Woods would seem to allow a mere reminder to the defendant either at the plea hearing or at sentencing that he may be subject to post-release control, statutes not raised or addressed in Woods require the court to mention the possibility of the parole board imposing certain amounts of prison time for post-release control violations both at the plea and at sentencing.
[¶ 30] According to R.C. 2943.032(E), prior to accepting a plea of guilty or no contest to a felony, the court shall personally inform the defendant that if the court imposes a prison term and if the offender violates a condition of post-release control imposed by the parole board on completion of the prison term, the parole board may impose upon the offender a residential sanction that includes a new prison term up to nine months. In reading this statute under an analysis similar to that required under Crim.R. 11(C), substantial compliance with the non-constitutional provision would suffice. See, e.g., State v. Coe
(Nov. 21, 2001), 8th Dist. No. 79575. Without substantial compliance though, the plea may be challenged on the grounds that it is not voluntary, knowing, or intelligent. Although appellate courts sometimes conclude that prejudice was not demonstrated because it was unlikely that the failure to advise under this section affected the defendant's decision to plead guilty, other courts have found that the lack of this disclosure requires plea withdrawal as it does not give an adequate explanation of the potential penalties.
[¶ 31] Pursuant to R.C. 2929.19(B)(3), where a court that determines at the sentencing hearing that a prison term is necessary, the court shall notify the offender: (d) he may be supervised under R.C.2967.28 after he leaves prison; and (e) if post-release control is imposed and he violates a condition of that control, the parole board may impose a prison term up to one-half of the prison term originally imposed. A failure to notify the offender under this statute has been remedied by remanding for resentencing or by provision of notification by the appellate court's modification of the trial court's judgment. SeeState v. Jenkins (Mar. 14, 2000), 7th Dist. No. 98-502 (reversing a sentence where these notifications were not made at sentencing held after a jury trial).
[¶ 32] Under the plain language of R.C. 2943.032(E) and2929.19(B)(3), it appears that a defendant who is convicted after trial must be notified at sentencing, under R.C. 2929.19(B)(3), that he shall or may (whatever the case may be) be subject to post-release control and that violation of the conditions of this control allows the parole board to impose a prison term of up to one-half of the original term. A defendant who pleads rather than going through trial should be informed according to R.C. 2943.032(E) prior to the court's acceptance of the plea. Thereafter, although, it may at first blush seem a bit redundant for the court to readvise the defendant about post-release control at the sentencing hearing, in order to conform to the plain language of R.C.2929.19(B)(3), this notice should be given. In fact, R.C. 2943.032(E) only advises the pleading defendant of the nine-month term that the parole board may impose for each violation, whereas the notification under R.C. 2929.19(B)(3) discloses to the sentenced defendant that the absolute maximum time the parole board can impose is one-half of the stated prison term.
[¶ 33] Here, at the plea hearing, defendant answered affirmatively when the court asked, "You understand in addition to any penitentiary time, I can still supervise you in the community for three to five years?" (Tr. 9). This generically advises appellant that he may be subject to some kind of post-release control; although, it implies court-supervision rather than parole board supervision. Additionally, for appellant's type of third degree felony (non-sex offense and no allegation of caused or threatened physical harm), he could not be supervised for up to five years but could only be supervised for up to three years. R.C.2967.28(C). More importantly, appellant was not personally advised at the plea hearing that the parole board could impose up to nine months of prison for each violation of post-release control. Further, he was not notified at sentencing that the parole board could impose a maximum of fifty percent of his original term for violations of post-release control. Although the sentencing entry states that the court complied with R.C. 2929.19(B)(3), neither the sentencing transcript nor the entry support this conclusion.
[¶ 34] Under the first assignment of error, appellant's plea has been vacated and the case has been ordered remanded. To avoid replication of the issues in this assignment on remand and on any subsequent appeal, the trial court should more specifically advise the defendant at any new plea hearing in accordance with R.C 2943.032(E) and then give the statutorily-required notifications at the sentencing hearing in accordance with R.C. 2929.19(B)(3)(d) and (e).
 ASSIGNMENT OF ERROR FIVE [¶ 35] Appellant's fifth and final assignment of error provides:
 [¶ 36] "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED TO A MAXIMUM TERM OF IMPRISONMENT."
 [¶ 37] Pursuant to R.C. 2929.14(C), the court may impose the maximum sentence for a felony only upon offenders who commit the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders, and upon certain repeat violent offenders. In sentencing under this division, the court must make a finding of the category and the reasons for imposing the maximum. R.C. 2929.19(B)(2)(d); State v. Edmonson (1999),86 Ohio St.3d 324, 326-29 (evaluating both the sentencing transcript and the sentencing entry). Appellant complains that he should not have received a maximum sentence. Because we are remanding for vacation of the plea, we shall not address this assignment of error at this time.
[¶ 38] For the foregoing reasons, the judgment of the trial court is hereby reversed, Tucci's plea is vacated, and this case is remanded for further proceedings according to law and consistent with this court's opinion.
Donofrio and DeGenaro, J J., concur.