The STATE of Ohio, Appellee,

v.

COLEMAN, Appellant.

[Cite as *State v. Coleman* (1997), 124 Ohio App.3d 78.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA06–795.

Decided Dec. 23, 1997.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Steven L. Taylor*, Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson*, Franklin County Public Defender, and *Paul Skendelas*, Assistant Public Defender, for appellant.

CLOSE, Judge.

Defendant-appellant, Wayne Coleman, appeals from a judgment of the Franklin County Court of Common Pleas, based on a judgment and sentence for the offense of manslaughter regarding the unlawful termination of a pregnancy. For the reasons stated below, the judgment of the trial court is affirmed.

Appellant was indicted on single counts of each of the following: murder, for purposely causing the termination of Olivia Williams's pregnancy; involuntary manslaughter, for causing the unlawful termination of Olivia Williams's pregnancy as a proximate result of committing or attempting to commit a felony of

domestic violence or felonious assault; felonious assault; domestic violence; and kidnapping. All counts stem from an incident involving Olivia Williams and her child by appellant. On motion, appellant sought to have those portions of the indictment, charging him with committing offenses involving the unlawful termination of Williams's pregnancy, dismissed. The motion was overruled. Subsequently, no contest pleas were entered to involuntary manslaughter and felonious assault. Sentence was imposed accordingly.

Appellant brings the following single assignment of error:

"The trial court erred in failing to grant the defense motion to dismiss portions of the indictment on the grounds that the statute proscribing the unlawful termination of pregnancy is unconstitutional."

Historically, there was no protection in the Criminal Code for unborn children unless they were subsequently born alive. *State v. Dickinson* (1971), 28 Ohio St.2d 65, 57 O.O.2d 255, 275 N.E.2d 599. The word "person" was strictly construed in criminal statutes. Am.Sub.S.B. No. 239 ("S.B. 239"), which was effective June 19, 1996, expanded the definition of "persons" for purposes of the Criminal code to include an unborn human. R.C. 2901.01(B)(1)(a)(ii).

The effect of this statute was to make unborn children "persons" under the law, as well as those subsequently born alive. The bill also created a criminal liability for those causing the "unlawful termination of another's pregnancy or another's unborn." Unlawful termination of another's pregnancy is defined as "causing the death of an unborn member of the species homo sapiens, who is or was carried in the womb of another, as a result of injuries inflicted during the period that begins with fertilization and that continues unless and until live birth occurs." R.C. 2903.09(A).

In so doing, the General Assembly excepted consensual abortions, pregnant women, and, in some circumstances, their physicians. In the case at hand, after appellant beat Williams, including kicks to the stomach, he refused her permission to go to the hospital. When she did seek medical help, the embryo was dead. On the day of the beating, Williams had been examined earlier that morning and the heartbeat of the child was heard.

█ Initially, we are asked to address the issue raised by appellant's motion to dismiss that portion of the indictment which includes the unlawful termination of pregnancy or causing serious physical harm to another's unborn, thereby raising his facial challenge to the "overbreadth" of S.B. 239. A facial challenge to a legislative act is the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. *United States v. Salerno* (1987), 481 U.S. 739, 749, 107 S.Ct. 2095, 2102–2103, 95 L.Ed.2d 697, 710. A facial challenge to this statute must fall simply

because, as appellant concedes, the state may prosecute and punish offenses committed after viability. Since the statute may be constitutional in some of its applications, a facial challenge would ordinarily be rejected. *Id.* To support a facial constitutional challenge, appellant must show that the punishment accorded for involuntary manslaughter would be cruel and unusual under every set of circumstances to which the statute is applicable. *Id.*

 The whole substance thereafter of appellant's argument is that the state cannot define the termination of an unborn child as a homicide unless the unborn is viable. A substantive due process claim requires the denial of a fundamental liberty interest. *Washington v. Glucksberg* (1997), 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772. There is no interest identified here that is fundamental under the standards applied. Quite simply, there never has been any notion that a third party, as appellant here, has a fundamental liberty interest in terminating another's pregnancy.

The Ohio Supreme Court also acknowledged, in *State v. Gray* (1992), 62 Ohio St.3d 514, 516, 584 N.E.2d 710, 711–712, that the protection of an unborn child is for legislative resolution. There is simply no fundamental right to cause harm to another, whether living or not living. The main thrust of appellant's argument appears to be that, pursuant to *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, the General Assembly has no legitimate interest in protecting pre-viable fetal life. The *Roe* court, itself, stated at 162, 93 S.Ct. at 731, 35 L.Ed.2d at 182, that the state had an "important legitimate interest in protecting the potentiality of human life." The *Roe* court, most importantly, addressed only the issue of a woman's decision of whether or not to terminate her pregnancy. It had nothing to do with the right of a third party to make that decision to terminate.

The United States Supreme Court went further in *Planned Parenthood v. Casey* (1992), 505 U.S. 833, 846, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674, 694, stating that "the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child." *Roe* protects a woman's constitutional right. It does not protect a third party's unilateral destruction of a fetus. *State v. Merrill* (Minn.1990), 450 N.W.2d 318. *Roe* gave women a fundamental right to terminate a pregnancy; however, that right does not translate into a fundamental right of a third person to use violent conduct to deprive the pregnant woman of her choice. *People v. Davis* (1994), 7 Cal.4th 797, 30 Cal.Rptr.2d 50, 872 P.2d 591.

 As we are required in this proceeding to recognize the constitutional standard, it should perhaps be stated again here. All enactments enjoy a strong presumption of constitutionality, and, before a court may declare a statute unconstitutional, "it must appear beyond a reasonable doubt that the legislation

and constitutional provision are clearly incapable of coexisting. * * * Further, doubts regarding the validity of a legislative enactment are to be resolved in favor of the statute." *State v. Gill* (1992), 63 Ohio St.3d 53, 55, 584 N.E.2d 1200, 1201.

In the final analysis, causing serious physical harm to another's body is a crime. Given that the state can impose a penalty for the damage done to any part of the body, it can create criminal liability for damage to a part of the body that subsequently may grow to be a viable human being. Should it make any difference whether that part of the body is subject ultimately to viability if not earlier terminated? We think not.

■ Appellant's procedural due process arguments are likewise rejected. Having entered a plea of no contest, appellant cannot now require those same safeguards that he waived.

■ Finally, appellant argues that the sentence here amounts to cruel and unusual punishment. Appellant's complaint is based on the fact that a woman and a doctor can freely abort a woman's pregnancy but appellant is punished for the same act of terminating the pregnancy. There is a rational basis to distinguish between the woman and her doctor on one hand and a third party who criminally assaults the woman and injures the unborn child on another. See *Smith v. Newsome* (C.A.11, 1987), 815 F.2d 1386; *People v. Ford* (1991), 221 Ill.App.3d 354, 163 Ill.Dec. 766, 581 N.E.2d 1189.

■ The California Supreme Court stated, in *Davis,* that a legislature "is free to impose upon the killer of a fetus the same penalty as is prescribed for the murder of a human being." 7 Cal.4th at 810, 30 Cal. Rptr.2d at 58, 872 P.2d at 599. The object of review for disproportionality of the sentence is to judge the penalty in relation to the crime, not to attempt to reach some sort of perfect system of "proportional" punishments under state law. *Harmelin v.. Michigan* (1991), 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836, 871–872. The Eighth Amendment does not require strict proportionality between crime and sentence but, rather, forbids only extreme sentences that are grossly disproportionate to the crime. *Id.* at 1001, 111 S.Ct. at 2705, 115 L.Ed.2d at 869 (Kennedy, J., concurring). Reviewing courts should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. *Id.* at 999, 111 S.Ct. at 2703–2704, 115 L.Ed.2d at 867. The punishment here is certainly not disproportionate. The General Assembly acted well within its discretion when it decided to provide appropriate penalties for the crime of involuntary manslaughter under R.C. 2903.04(A), involving the termination of fetal life. See *Davis,* 7 Cal.4th at 817, 30 Cal. Rptr.2d at 63, 872 P.2d at 604 (Kennard, J., concurring).

Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DESHLER and JOHN C. YOUNG, JJ., concur.