[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 132.]

THE STATE EX REL. BRAY, APPELLANT, *v*. RUSSELL, WARDEN, APPELLEE.

HADDAD V. RUSSELL, WARDEN.

WHITE, APPELLEE, *v*. KONTEH, WARDEN, APPELLANT.

[Cite as *State ex rel. Bray v. Russell*, 2000-Ohio-117.]

*Criminal law—Bad time added to prison term for violation occurring during course of prisoner's stated prison term—R.C. 2967.11 violates the constitutional doctrine of separation of powers and is therefore unconstitutional.*

R.C. 2967.11 violates the constitutional doctrine of separation of powers.

(Nos. 98-2694, 99-273 and 99-542—Submitted November 30, 1999—Decided June 14, 2000.)

APPEAL from the Court of Appeals for Warren County, No. CA98-06-068.

IN HABEAS CORPUS.

APPEAL from the Court of Appeals for Trumbull County, No. 99-T-0020.

_____

{¶ 1} In 1997, appellant Gary Bray was charged with and convicted of drug possession and sentenced to an eight-month prison term. While in prison, Bray allegedly assaulted a prison guard in violation of R.C. 2903.13. Pursuant to R.C. 2967.11(B), the Ohio Parole Board imposed a ninety-day bad-time penalty to be added to Bray's original term.

{¶ 2} Bray's original sentence of eight months for drug possession expired on June 5, 1998, at which time his additional ninety-day penalty began. On June 12, 1998, Bray filed a writ of habeas corpus in the Court of Appeals for Warren County, claiming that Warden Harry Russell was unlawfully restraining him. Bray completed his ninety-day bad-time penalty and the warden moved to dismiss the complaint as moot.

**{¶ 3}** The court of appeals rejected the warden's motion because it found that the issues raised by Bray were capable of repetition yet evading review. On the merits, Bray argued that R.C. 2967.11 was facially unconstitutional because it violated due process, equal protection, and separation of powers. The court of appeals rejected each of Bray's constitutional challenges.

**{¶ 4}** In 1998, Richard Haddad was convicted of attempted aggravated assault and sentenced to a nine-month prison term. Haddad was scheduled for release on November 12, 1998. However, in October 1998, while in prison, Haddad allegedly committed an assault and was sentenced to an additional ninety days of incarceration pursuant to R.C. 2967.11(B).

**{¶ 5}** On February 3, 1999, Haddad filed the instant petition for a writ of habeas corpus in this court, alleging that Warden Harry Russell was unlawfully restraining him and claiming that R.C. 2967.11 was facially unconstitutional. Haddad completed his ninety-day bad-time penalty, and Russell stated in his return of writ that Haddad had been released upon completion of sentence.

**{¶ 6}** In 1997, appellee Samuel White was convicted of receiving stolen property and sentenced to a sixteen-month prison term. White was scheduled for release on December 22, 1998. However, in June 1998, White allegedly committed an assault and was sentenced to an additional thirty days of incarceration pursuant to R.C. 2967.11(B). In the late summer of 1998, White allegedly committed another assault and was sentenced to an additional ninety days.

**{¶ 7}** On February 5, 1999, White filed for a writ of habeas corpus in the Court of Appeals for Trumbull County, claiming that Warden Khelleh Konteh was unlawfully restraining him. On March 23, 1999, the court of appeals held that R.C. 2967.11 was unconstitutional because it violated due process and separation of powers. The court did not address White's equal protection claim.

**{¶ 8}** The cause is now before this court pursuant to appeals as of right in case Nos. 98-2694 and 99-542, and upon the pleadings in case No. 99-273.

———————————

*David H. Bodiker,* State Public Defender, *Jill E. Stone* and *Alison M. Clark,* Assistant State Public Defenders, for appellant Bray, appellee White, and petitioner Haddad.

*Betty D. Montgomery*, Attorney General, *Edward B. Foley*, *pro hac vice*, State Solicitor, *Todd R. Marti* and *Michele M. Schoeppe*, Assistant Attorneys General, for appellant Konteh, and appellee and respondent Russell.

———————————

**PFEIFER, J.**

{¶ 9} This case involves a facial challenge to the constitutionality of R.C. 2967.11, which was originally raised in the court of appeals by appellant Bray and appellee White, and in petitioner Haddad's petition for habeas corpus. We conclude that R.C. 2967.11 violates the constitutional doctrine of separation of powers. Accordingly, we need not address whether R.C. 2967.11 violates equal protection or due process.

{¶ 10} This court has repeatedly affirmed that the doctrine of separation of powers is "implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 158-159, 28 OBR 250, 251, 503 N.E.2d 136, 138; *State v. Warner* (1990), 55 Ohio St.3d 31, 43-44, 564 N.E.2d 18, 31. See *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 475, 715 N.E.2d 1062, 1085; *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 463, 668 N.E.2d 457, 465-466.

{¶ 11} "The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others*." State ex rel. Bryant*

*v. Akron Metro. Park Dist.* (1929), 120 Ohio St. 464, 473, 166 N.E. 407, 410. See, also, *Knapp v. Thomas* (1883), 39 Ohio St. 377, 391-392; *State ex rel. Finley v. Pfeiffer* (1955), 163 Ohio St. 149, 56 O.O. 190, 126 N.E.2d 57, paragraph one of the syllabus.

{¶ 12} The state argues that the doctrine of separation of powers "applies only when there is some interference with another governmental branch." See *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 38, 661 N.E.2d 187, 193. See, also, Krent, Separating the Strands in Separation of Powers Controversies (1988, 74 Va.L.Rev. 1253 (discussion of functionalist approach advocated by the state); Vine, Constitutionalism and the Separation of Powers (2 Ed.1998) 402. We disagree. The language relied upon by the state's argument was dictum and the underlying concept was not developed in *Plain Dealer*, prior to *Plain Dealer*, or subsequent to *Plain Dealer*.

{¶ 13} Further, the very purpose of the doctrine of separation of powers undercuts the argument. The people adopted the Ohio Constitution, not the legislative, executive, or judicial branches of government. In *Zanesville v. Zanesville Tel. & Tel. Co.* (1900), 63 Ohio St. 442, 451, 59 N.E. 109, 110, this court stated: "The distribution of the powers of government, legislative, executive and judicial, among three co-ordinate branches, separate and independent of each other, is a fundamental feature of our system of constitutional government. In the preservation of these distinctions is seen, by many able jurists, the preservation of all the rights, civil and political, of the individual, secured by our free form of government; and it is held that any encroachment by one upon the other is a step in the direction of arbitrary power." Though the judgment in *Zanesville* was reversed (1901), 64 Ohio St. 67, 59 N.E. 781, we adhere to the principles espoused therein. The reason the legislative, executive, and judicial powers are separate and balanced is to protect the people, not to protect the various branches of government.

{¶ 14} R.C. 2967.11(B) states: "As part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. * * * If a prisoner's stated prison term is extended under this section, the time by which it is so extended shall be referred to as 'bad time.' " A "violation" is defined as "an act that is a criminal offense under the law of this state or the United States, whether or not a person is prosecuted for the commission of the offense." R.C. 2967.11(A).

{¶ 15} Other sections in R.C. 2967.11 set forth the procedures to be followed to determine whether a "violation," a crime, has been committed. In short, R.C. 2967.11(C), (D), and (E) enable the executive branch to prosecute an inmate for a crime, to determine whether a crime has been committed, and to impose a sentence for that crime. This is no less than the executive branch's acting as judge, prosecutor, and jury. R.C. 2967.11 intrudes well beyond the defined role of the executive branch as set forth in our Constitution.

{¶ 16} In our constitutional scheme, the judicial power resides in the judicial branch. Section 1, Article IV of the Ohio Constitution. The determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary. See *State ex rel. Atty. Gen. v. Peters* (1885), 43 Ohio St. 629, 648, 4 N.E. 81, 86. See, also, *Stanton v. Tax Comm.* (1926), 114 Ohio St. 658, 672, 151 N.E. 760, 764 ("the primary functions of the judiciary are to declare what the law is and to determine the rights of parties conformably thereto"); *Fairview v. Giffee* (1905), 73 Ohio St. 183, 190, 76 N.E. 865, 867 ("It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and, applying the law to the facts, to render a final judgment.").

{¶ 17} Prison discipline is an exercise of executive power and nothing in this opinion should be interpreted to suggest otherwise. However, trying,

convicting, and sentencing inmates for crimes committed while in prison is not an exercise of executive power. Accordingly, we hold that R.C. 2967.11 violates the doctrine of separation of powers and is therefore unconstitutional.

{¶ 18} Based on the foregoing, the judgment of the court of appeals in case No. 98-2694 is reversed, the judgment of the court of appeals in case No. 99-542 is affirmed, and the petitioner is discharged in case No. 99-273.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and COOK, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 19} The majority decides that "R.C. 2967.11 violates the constitutional doctrine of separation of powers" because it "enable[s] the executive branch to prosecute an inmate for a crime, to determine whether a crime has been committed, and to impose a sentence for that crime." I differ because I agree with the state's premise that "bad time" is part of the original judicially imposed sentence. And since "bad time" is a part of the offender's original sentence, then its administration by the executive branch presents no separation-of-powers issue.

I. The Presumption of Constitutionality

{¶ 20} We know that enactments of the General Assembly are presumed to be constitutional. In order for this court to declare a statute unconstitutional, it must appear beyond a reasonable doubt that the statute is incompatible with particular constitutional provisions. *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, 576. The majority opinion fails to acknowledge these axioms of judicial restraint that ought to anchor any analysis involving the separation-of-powers principle.

**{¶ 21}** The instant cases present a facial challenge to the constitutionality of R.C. 2967.11. Such challenges are the most difficult to mount successfully, because the challenger must establish that no set of circumstances exists under which the Act would be valid. *State v. Coleman* (1997), 124 Ohio App.3d 78, 80, 705 N.E.2d 419, 421, citing *United States v. Salerno* (1987), 481 U.S. 739, 749, 107 S.Ct. 2095, 2102-2103, 95 L.Ed.2d 697, 710.

II. The United States Supreme Court Assesses *Interference* with Another Branch under the Separation-of-Powers Doctrine

**{¶ 22}** The interconnected roles of the executive and judicial branches under the "bad time" scheme would not offend the separation-of-powers doctrine if analyzed according to federal jurisprudence on the subject. The United States Supreme Court has "squarely rejected" the " 'archaic view of the separation of powers as requiring three airtight departments of government.' " *Nixon v. Admr. of Gen. Serv.* (1977), 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867, 891, citing *United States v. Nixon* (1974), 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039, and quoting *Nixon v. Admr. of Gen. Serv.* (D.D.C.1976), 408 F.Supp. 321, 342.

**{¶ 23}** In its place, the Supreme Court has adopted the more "pragmatic, flexible approach" advocated by James Madison in Federalist No. 47. 433 U.S. at 442, 97 S.Ct. at 2789, 53 L.Ed.2d at 890. Accordingly, the Supreme Court in *Nixon v. Admr.* did not merely consider *the nature* of the challenged legislative Act (*i.e.,* was it "executive" or "judicial") to determine whether Congress violated the separation of powers. Rather, the Supreme Court focused on the extent to which the legislative Act actually "*prevent[ed] the Executive Branch from accomplishing its constitutionally assigned functions*." (Emphasis added.) *Id.* at 443, 97 S.Ct. at 2790, 53 L.Ed.2d at 891, citing *United States v. Nixon*, 418 U.S. at 711-712, 94 S.Ct. at 3109, 41 L.Ed.2d at 1066.

**{¶ 24}** If applied to our case, that approach would focus not on whether the Parole Board's delegated function under R.C. 2967.11 could be described as

"adjudicatory" in nature, but would focus instead on the extent to which the "bad time" statute prevents the judicial branch from accomplishing its constitutionally assigned functions. *Id.*

{¶ 25} Until today, Ohio cases reflected the *Nixon* sort of analysis. In *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, we determined that the separation-of-powers doctrine "applies only when there is some *interference* with another governmental branch." (Emphasis added.) (1996), 75 Ohio St.3d 31, 38, 661 N.E.2d 187, 193. The majority discounts as dictum *Plain Dealer*'s congruence with the United States Supreme Court. But this court reiterated the link between unconstitutional interbranch interference and the separation of powers after *Plain Dealer*. In *State v. Hochhausler*, we held that a statute violated the separation of powers because the Act "improperly interfere[d]" with the exercise of a court's functions by depriving courts of their ability to grant a stay. (1996), 76 Ohio St.3d 455, 464, 668 N.E.2d 457, 466. I would follow *Plain Dealer* and *Hochhausler* here, assessing whether the adjudicatory functions of the Parole Board under R.C. 2967.11 interfere with the judicial branch by preventing our branch from accomplishing its own judicial functions.

{¶ 26} The majority rejects the interference requirement of *Nixon v. Admr.* and *Plain Dealer*, and focuses instead on the *form* of the prison disciplinary proceedings that occur under R.C. 2967.11. Accordingly, the majority assigns significant weight to the fact that R.C. 2967.11(A) defines a bad-time "violation" as a "criminal offense." But the fact that the General Assembly chose the drafting strategy of defining "violations" with reference to the offenses listed in our criminal code does not transform those disciplinary "violations"—for which administrative discipline is a constitutionally permissible response—into "crimes" resulting in a new determination of guilt or innocence. See *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 697 N.E.2d 655.

8

{¶ 27} In *VFW Post*, for example, we determined that in order to find a *violation* of an administrative rule regarding gambling devices, the Liquor Commission must determine that the gambling devices in question were used to commit one of the gambling offenses listed in the *criminal code*. *Id.* at 81, 697 N.E.2d at 658. In the same case, we noted that while a criminal *conviction* must be supported by proof beyond a reasonable doubt, a *violation* of the administrative rule need only be supported by a preponderance of the evidence. *Id.* That administrative discipline may result from "violations" defined with reference to the criminal code does not prevent an agency from engaging in its delegated adjudicatory function, even in the absence of a judicial determination of guilt beyond a reasonable doubt. See *In re Eastway* (1994), 95 Ohio App.3d 516, 525, 642 N.E.2d 1135, 1141 (holding that the acts of a physician that would constitute a felony under Ohio law could be considered by the State Medical Board in imposing discipline, even though the physician was not *convicted* of a felony as a result of those acts).

{¶ 28} The majority also believes that the "bad time" statute impermissibly permits the Parole Board to "determine whether a crime has been committed" and "impose a sentence for that crime." But though R.C. 2967.11(B) permits the Parole Board to "punish" a prisoner and "extend" a sentence, the General Assembly carefully noted that this occurs only "[a]s part of" the prisoner's *original sentence*—which is imposed by the judicial branch. See R.C. 2967.11(B). Other provisions of the Revised Code explicitly confirm that the "bad time" extension is a part of the offender's original sentence. R.C. 2929.19(B)(3)(b) requires the original sentencing judge to notify the offender at the sentencing hearing that "*as part of the sentence,* the Parole Board may extend the stated prison term for certain violations of prison rules." (Emphasis added.) And R.C. 2943.032 requires the trial judge to provide similar notice to defendants prior to accepting their pleas.

**{¶ 29}** "Prison disciplinary proceedings are not part of a criminal prosecution." *Wolff v. McDonnell* (1974), 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951. Because I believe that the same can be said for the rule-infraction proceedings that occur under R.C. 2967.11, I respectfully dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

———————————