[Cite as *State v. Bothuel*, 2022-Ohio-2606.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-20-1053

      Appellee                               Trial Court No.  CR0201902776

v.

Lewis Bothuel                                          **DECISION AND JUDGMENT**

      Appellant                              Decided:  July 29, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} This case is before the court on remand from the Ohio Supreme Court.

## I.     Background

{¶ 2} Defendant-appellant, Lewis Bothuel, appealed the February 14, 2020

judgment of the Lucas County Court of Common Pleas, convicting him of burglary, and

sentencing him to an indefinite prison term of a minimum of six years and a maximum of nine years. He assigned two errors for our review:

> 1. The sentencing provisions of Senate Bill 201, otherwise known as the Reagan Tokes Act, are unconstitutional.

> 2. Appellant's sentence does not achieve the purposes and principles of sentencing.

**{¶ 3}** In a decision journalized on March 19, 2021, we affirmed the trial court judgment, however, we dismissed Bothuel's first assignment of error—challenging the constitutionality of the Reagan Tokes Law—on the basis that that assignment was not ripe for review pursuant to our decision in *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702. *State v. Bothuel*, 6th Dist. Lucas No. L-20-1053, 2021-Ohio-875, ¶ 18. Recognizing that our decision was in conflict with other Ohio appellate districts, we certified a conflict to the Ohio Supreme Court. The motion to certify was allowed. *State v. Bothuel,* 163 Ohio St.3d 1490, 2021-Ohio-2097, 169 N.E.3d 1267. The case was held pending a decision in *Maddox. Id.*

**{¶ 4}** The Ohio Supreme Court determined that challenges to the constitutionality of the Reagan Tokes Law are, in fact, ripe for review, and reversed *Maddox. State v. Maddox*, Slip Opinion No. 2022-Ohio-764. It, therefore, reversed and remanded *Bothuel. In re Cases Held for the Decision in State v. Maddox*, Slip Opinion No. 2022-Ohio-1352. The merits of Bothuel's first assignment of error are now before the court.

2.

## II.     Law and Analysis

{¶ 5} Senate Bill 201—the Reagan Tokes Law—became effective on March 22, 2019.  The Law "significantly altered the sentencing structure for many of Ohio's most serious felonies" by implementing an indefinite sentencing system for non-life, first and second-degree felonies committed on or after its effective date.  *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, 2020 WL 3032862, ¶ 5, fn. 1.  The Law specifies that the indefinite prison terms will consist of a minimum term, selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A), and a maximum term determined by formulas set forth in R.C. 2929.144.  The Law establishes a presumptive release date from prison at the end of the minimum term, but the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut the presumption if it determines, after a hearing, that one or more factors apply, including that the offender's conduct while incarcerated demonstrates that he continues to pose a threat to society.  R.C. 2967.271(B), (C)(1), (2) and (3).  If ODRC rebuts the presumption, it may maintain the offender's incarceration for a reasonable, additional period of time, determined by ODRC, but not to exceed the offender's maximum prison term.  R.C. 2967.271(D).

{¶ 6} In his first assignment of error, Bothuel challenges the Reagan Tokes Law on the basis that (1) it violates the separation-of-powers doctrine; (2) it violates the

3.

constitutional right to a trial by jury; and (3) it violates the constitutional right to due process. We consider each of Bothuel's arguments.

## A. Separation of Powers

{¶ 7} Bothuel claims that the Reagan Tokes Law violates the constitutional doctrine of separation of powers because it "removes the sentencing enhancement from the prerogative of the Judicial Branch and transfers it to the Executive Branch." It compares the Law to the procedure for imposing "bad time" under former R.C. 2967.11, which the Ohio Supreme Court found unconstitutional in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000). Bothuel also contends that the separation-of-powers problem is further exacerbated by the fact that the reasons for extending a sentence all depend on determinations that were, in the first place, made by ODRC.

{¶ 8} The state responds that the Reagan Tokes Law is different from the bad-time statute because unlike former R.C. 2967.11, ODRC is not permitted to extend an offender's prison term beyond the maximum term originally imposed by the sentencing court. It argues that the discretion afforded ODRC under the Law is consistent with the authority granted to the Adult Parole Authority to grant parole and to impose postrelease control. The state emphasizes that the trial court—not ODRC—is responsible for determining whether to impose a prison term, selecting the length of the minimum sentence, deciding whether to order sentences to be served concurrently or consecutively,

4.

and pronouncing and imposing the indefinite sentence based on the selected minimum term and the resulting maximum term.

{¶ 9} We considered whether the Reagan Tokes Law violates the constitutional doctrine of separation of powers in *State v. Gifford*, 6th Dist. Lucas No. L-21-1201, 2022-Ohio-1620 (and more recently in *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072 and *State v. Eaton*, 6th Dist. Lucas No. L-21-1121). As we recognized in those cases, "the doctrine of separation of powers is 'implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government.'" *Bray* at 134, quoting *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-159, 503 N.E.2d 136 (1986). "The legislative has the sole right and power to enact laws, the judiciary to declare their meaning and application, and the executive to enforce their execution." *Chesnut v. Shane's Lessee*, 16 Ohio 599, 621 (1847). "'The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.'" *Bray* at 134, quoting *State ex rel. Bryant v. Akron Metro. Park Dist.*, 120 Ohio St. 464, 473, 166 N.E. 407 (1929).

{¶ 10} In connection with its role in declaring the "meaning and application" of laws, the judiciary is solely responsible for determining guilt and sentencing a defendant

5.

who has been convicted of a crime. *Id.* at 136. Like the defendant in *Gifford,* Bothuel argues that because R.C. 2967.271 permits ODRC to rebut the presumption that an offender will be released after serving his or her minimum sentence, the statute deprives the judiciary of its exclusive authority and instead authorizes ODRC to increase an offender's sentence, thereby undermining judicial power and vesting this authority in the ODRC. We disagree.

{¶ 11} Under the Reagan Tokes Law, the trial court imposes both a minimum and maximum sentence. R.C. 2929.14 and 2929.144. As we emphasized in *Gifford,* while R.C. 2967.271(C) and (D) permit ODRC to "maintain" an offender's incarceration for "additional"—and "reasonable"—periods beyond the prisoner's presumptive minimum term, ODRC is *not* permitted to "increase" the prisoner's sentence beyond the maximum sentence imposed by the trial court. In this way, the Law is different than other legislation struck down by the Ohio Supreme Court as violating separation of powers, such as the "bad time" statute (former R.C. 2967.11), which allowed ODRC to extend an offender's prison term beyond the original sentence imposed by the court for misconduct committed during incarceration. Here, any additional period of incarceration "shall not exceed the offender's maximum prison term." R.C. 2967.271(D). As such, the authority granted to ODRC under the Reagan Tokes Law is more comparable to the authority granted to the parole board under the postrelease control statute, R.C. 2967.28, which the

6.

Ohio Supreme Court upheld in *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000).

{¶ 12} As we summarized in *Gifford,* the Ohio Supreme Court in *Woods* recounted the evolution of Ohio's sentencing statutes. It explained that Ohio enacted truth-in-sentencing laws, Senate Bill 2, to ensure that sentences imposed by trial judges were the sentences served, unless altered by the judge. "This was primarily accomplished by two methods: eliminating indefinite sentences and eliminating parole." *Id.* at 508. The court described that before S.B. 2, offenders rarely served the time to which they were sentenced because (1) indefinite sentences were prescribed for most serious felonies, (2) upon entering a correctional institution, an offender's sentence was automatically reduced by 30 percent for good behavior, and (3) the parole board "reviewed all prison sentences for disparity among offenders and attempted to abate inequities." *Id.* at 508. Under S.B. 2, offenders were sentenced to definite sentences, good time was significantly reduced and had to be earned, and the parole board no longer had authority to determine how long an offender stayed in prison.

{¶ 13} The Ohio Supreme Court explained that before S.B. 2, offenders were subject to parole if they were convicted of first- or second-degree felonies or third- or fourth-degree felonies that involved an act of violence, or if they had previously been convicted of a crime of violence. Instead of parole, S.B. 2 introduced "post-release control." Similar to parole, a period of postrelease control is required for all offenders

7.

imprisoned "for first- or second-degree felonies, felony sex offenses, or a third-degree felony, not a felony sex offense, in which the offender caused or threatened to cause physical harm to a person." *Id.*, citing R.C. 2967.28(B). Postrelease control may also be required at the discretion of the Parole Board for offenders imprisoned for other felonies. *Id.,* citing R.C. 2967.28(C).

{¶ 14} The Ohio Supreme Court recognized that R.C. 2967.28 gives the parole board significant discretion to impose conditions of release "designed to protect the public and to promote the releasee's successful reintegration into the community." *Id.*, citing Ohio Adm.Code 5120:1–1–17(A). R.C. 2967.28(D) sets forth factors for the APA to consider in determining whether to impose postrelease control and what conditions to impose. It even permits the board to impose residential sanctions including a prison term.

{¶ 15} Ultimately, the Ohio Supreme Court reversed the decision of this court— which had found that the postrelease control statute violated the separation of powers doctrine because the delegation of powers to the Adult Parole Authority usurped judicial authority—after it concluded that the delegation of power to the APA is no different for postrelease control than it was under the former system of parole. It compared the two systems.

{¶ 16} Under the parole system, the Ohio Supreme Court explained, a sentencing court imposed an indefinite sentence with the possibility of parole. It could control the maximum length of the prison sentence, but had no power over when parole might be

8.

granted or what conditions of parole would be imposed. Similarly, under postrelease control, the sentencing court imposes a sentence from the options available under the sentencing scheme, informs the offender that he or she may be subject to a period of postrelease control, and advises him or her that a violation of the conditions of postrelease control could result in additional time up to 50 percent of the original sentence.

{¶ 17} In *Woods,* the defendant argued that the postrelease control statute was similar to the bad time statute that was found unconstitutional in *Bray.* But the Ohio Supreme Court found that unlike bad time—where a crime committed while incarcerated resulted in an additional sentence not imposed by the trial court—the imposition of postrelease control is part of the judicially-imposed sentence. Also, it explained, postrelease control sanctions are aimed at behavior modification to facilitate reintegration into the community rather than mere punishment for an additional crime, as was the case with the bad-time statute. The court acknowledged that the sentencing judge has no control over how much time an offender may serve on postrelease control, but it observed that this was also true for parole. It noted that "for as long as parole has existed in Ohio, the executive branch * * * has had absolute discretion over that portion of an offender's sentence." *Id.* at 512, citing *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 4 N.E. 81 (1885). It concluded that "the APA's discretion in managing post-release control does

not impede the function of the judicial branch," therefore, the statute did not violate the separation of powers doctrine. *Id.* at 512.

{¶ 18} As we recognized in *Gifford,* 6th Dist. Lucas No. L-21-1201, 2022-Ohio-1620, since *Woods*, a unanimous decision of the Ohio Supreme Court reaffirmed the holding and reasoning in that case, recognizing that a trial court's imposition of postrelease-control in its original sentence "avoids any potential separation-of-powers problem." *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 19, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19.

{¶ 19} Moreover, it is important to note that *Woods* is not the first time that the Ohio Supreme Court has recognized the role of the executive branch in determining the circumstances under which a properly-sentenced offender should be released from prison. In *McDougle v. Maxwell*, 1 Ohio St.2d 68, 71, 203 N.E.2d 334, 337 (1964), the Ohio Supreme Court recognized that "[t]he granting of parole and the final release of prisoners is the function of the Pardon and Parole Commission * * * as is the supervision of those on parole * * *. It emphasized that "[w]hether a prisoner should be released before he has served his maximum sentence is an administrative not a judicial matter." *Id.*

{¶ 20} Here, there are strong similarities between the authority of the judicial and executive branches under the Reagan Tokes Law and their authority under the systems of parole and postrelease control that the Ohio Supreme Court upheld in *Woods* and supported in *McDougle*. Under the Reagan Tokes Law, the *trial court* imposes a

10.

minimum sentence and a maximum sentence. While ODRC may rebut the presumption that an offender will be released after service of his or her minimum sentence (or on the presumptive earned early release date) if it demonstrates any of the circumstances enumerated in R.C. 2967.271(C), under no circumstances may it maintain an offender's incarceration beyond the maximum term imposed by the sentencing court. As such, the executive agency does not impede the function of the judicial branch, and the constitutional doctrine of separation of powers is not violated. *See Gifford* at ¶ 36.

### B. Right to Trial by Jury

{¶ 21} Bothuel argues that the Reagan Tokes Law violates the constitutional right to a trial by jury. He claims that under U.S. Supreme Court authority—*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)—any finding of fact upon which an offender's authorized punishment may be increased must be found by a jury beyond a reasonable doubt. He maintains that because under the Reagan Tokes Law an increase in punishment beyond the presumptive sentence is dependent on findings made by ODRC— not a jury—the Law violates the right to a jury trial. The state does not specifically respond to this argument.

{¶ 22} The right to a trial by jury is protected by the Sixth Amendment of the United States Constitution and Article I, Section 5, of the Ohio Constitution. In

11.

*Apprendi*, the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 492. In *Ring*, the Court held that the presence or absence of aggravating factors required for imposition of the death penalty must be found by a jury. *Id.* at 609. And in *Blakely*, the Court held that the right to a trial by jury was violated where the defendant was subject to a prison term of three years more than the statutory maximum based on a finding of "deliberate cruelty" made by the trial judge and not a jury. *Id.* at 305.

{¶ 23} Under the Reagan Tokes Law, there are no circumstances under which ODRC may increase punishment beyond the maximum term permitted by statute or imposed by the sentencing court. Any additional term of incarceration imposed under the Law may not exceed the maximum term imposed by the sentencing court. *See* R.C. 2967.271(D)(1) ("The additional period of incarceration * * * shall not exceed the offender's maximum prison term."). The Law, therefore, does not run afoul of the principals announced in *Apprendi, Ring,* or *Blakely* and does not violate the constitutional right to a trial by jury.

### C. Due Process

{¶ 24} Finally, Bothuel claims that the Reagan Tokes Law violates the right to due process. He argues that the statute fails to give adequate notice of what it takes to trigger "additional" prison time and fails to define what it means to "pose a threat to society" or

12.

to "not be[] rehabilitated." He also argues that offenders' security classes and placement in restrictive housing are matters of prison administration that are virtually unreviewable, yet under R.C. 2967.271(A)(2) and (3) constitute triggering events that allow offenders' prison terms to be extended beyond the minimum sentence. And Bothuel contends that the statute provides no structure for how additional-term hearings will be conducted and what rights offenders will have at those hearings.

{¶ 25} The state responds to some, but not all, of these arguments. It claims that the presumption of release after service of the minimum term is analogous to parole-release decisions and it claims that only minimal process is due offenders under the Reagan Tokes Law. It emphasizes that R.C. 2967.271(C) permits a hearing before ODRC may rebut the presumption of release and disagrees that the Law fails to provide the requisite due-process protections.

{¶ 26} We begin by addressing Bothuel's claim that the statute provides no structure for how additional-term hearings will be conducted and what rights offenders will have at those hearings.

{¶ 27} As we recently recognized in *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072, the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution guarantee procedural due process. "The Due Process Clause applies when government action deprives a person of liberty or property[.]" *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442

13.

U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). If due process applies, the question becomes what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* At a minimum, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8, citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

{¶ 28} In *Stenson,* we concluded that because the Reagan Tokes Law creates a presumption of release after service of an offender's minimum sentence, it creates a liberty interest implicating due process rights. *See Stenson* at ¶ 25, citing *Greenholtz* at 12; *See also Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (finding that inmates had liberty interest in state-created right to good-time credit, the extinguishment of which entitled them to due process to insure that the right "is not arbitrarily abrogated"). Having concluded that a liberty interest exists, we proceeded in *Stenson* to determine what process is due under the circumstances.

{¶ 29} We recognized in *Stenson* that courts that have considered what process is due under the additional-term provisions of the Reagan Tokes Law often draw analogies between the Law and either (1) probation or parole *release* decisions, or (2) probation or parole *revocation* decisions. We acknowledged that neither release nor revocation decisions afford a defendant the "full panoply of rights due" in a criminal prosecution,

14.

however, the U.S. Supreme Court has determined that the latter requires greater procedural safeguards than the former. *Stenson* at ¶ 26, quoting *Morrissey* at 480; *Greenholtz,* at 10.

{¶ 30} As we observed in *Stenson,* the Court concluded in *Morrissey*, where parole *revocation* was at issue, that due process required "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey* at 489. It concluded in *Greenholtz*, where parole *release* was at issue, that due process was afforded where an offender was given an opportunity to be heard, and in the case of denial of parole, information was provided concerning in what respects the offender fell short of qualifying for parole. *Id.* at 16.

{¶ 31} The U.S. Supreme Court explained in *Greenholtz* its rationale for differentiating between release and revocation decisions. In a parole revocation decision, the Court explained, an offender is threatened with the deprivation of the liberty he *has*; in a parole release decision, the offender merely *desires* liberty. The U.S. Supreme Court

15.

recognized that parole-revocation determinations actually require two decisions: "whether the parolee in fact acted in violation of one or more conditions of parole and whether the parolee should be recommitted either for his or society's benefit." *Id.* at 9. It emphasized that the first step in a parole revocation decision "involves a wholly retrospective factual question." *Id.* at 9. Parole release decisions, on the other hand, are "more subtle and depend[] on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." (Internal citations and quotations omitted.) *Id.* at 9-10. "Unlike the revocation decision," when the board reviews a parole eligibility decision, "there is no set of facts which, if shown, mandate a decision favorable to the individual." *Id.* at 10. To the contrary, the parole release decision is "subjective" and "predictive," and the statute "vests very broad discretion" in the parole board. *Id.* at 13.

{¶ 32} We noted in *Stenson* that the Reagan Tokes Law creates a presumption that an offender will be released after service of his or her minimum sentence. But we also observed that it does not provide for a "purely subjective appraisal" whether release is advisable after service of the minimum sentence. Rather, under R.C. 2967.271(B) and (C), an Ohio offender *must* be released after service of the minimum sentence unless ODRC makes the purely factual finding that (1) the offender is a security level three or higher at the time of the hearing, or (2) the offender was placed in extended restrictive

housing within the year preceding the hearing—classifications and decisions made pursuant to ODRC's own detailed sets of policies and procedures—*or* (3) during his incarceration, the offender committed rule violations that involved compromising the security of the institution, compromising the safety of the staff or inmates, or physical harm or the threat of physical harm to the staff or, or committed a violation of law that was not prosecuted, and the infractions show that the offender has not been rehabilitated, *and* the offender's behavior while incarcerated demonstrates that he or she continues to pose a threat to society.

{¶ 33} As we emphasized in *Stenson*, in this way, the Reagan Tokes Law functions unlike the merely discretionary decision to release an offender on parole and more like a parole revocation decision. It requires two determinations under R.C. 2967.271(C)(1): (1) did the offender, during his incarceration, commit certain rule violations or unprosecuted crimes?—"wholly retrospective factual question[s]"; and (2) does this behavior demonstrate that the offender still poses a threat to society? *Id.* at 8. For these reasons, we concluded in *Stenson* that the liberty interest at stake under the Reagan Tokes Law is more akin to the liberty interest at stake in a parole revocation decision rather than a parole release decision. *Id.* at ¶ 30. *See also Eaton,* 6th Dist. Lucas No. L-21-1121 (Mayle, J., concurring).

{¶ 34} Because the Reagan Tokes Law creates a liberty interest more akin to probation revocation decisions, we found in *Stenson* that this means that the type of

process due in *Morrissey* is due under the additional-term provisions of the Law. Here, however—as in *Stenson*—ODRC has not sought to extend Bothuel's term beyond the presumptive minimum sentence. Bothuel's challenge to the Reagan Tokes Law is necessarily a facial challenge. "To prevail on a facial constitutional challenge, the challenger must prove the constitutional defect, using the highest standard of proof, which is also used in criminal cases, proof beyond a reasonable doubt." *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21, citing *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. "A facial challenge to a legislative act is the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid." *State v. Coleman*, 124 Ohio App.3d 78, 80, 705 N.E.2d 419 (10th Dist.1997), citing *United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095, 95 L.Ed.2d 69 (1987). "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37, citing *id.*

{¶ 35} As we observed in *Stenson,* in considering the process due a parolee whose parole is being revoked, the U.S. Supreme Court in *Morrissey*, 408 U.S. at 488, 92 S.Ct. 2593, 33 L.Ed.2d 484, acknowledged that most states have enacted legislation setting forth procedural requirements for parole revocation hearings, but others have done so by

18.

judicial decision. Although the legislation in the present case does not involve parole revocation, *Morrissey* is instructive because it necessarily implies that the specific procedural requirements applicable to protect a particular liberty interest need not be set forth in the legislation itself. In other words, *Morrissey* suggests that the Reagan Tokes Law may not be found to be unconstitutional, on its face, as violating due process merely because the specific procedures for invoking an additional period of incarceration are not set forth in the Law itself.

{¶ 36} Here, the Reagan Tokes Law states simply that ODRC may rebut the presumption of release at a "hearing." R.C. 2967.271(C) and (D). It provides no details concerning the type or timing of notice that must be provided to the offender, the procedures for the hearing (including pre-hearing disclosure of evidence, the type of evidence and witnesses that may be presented, or the offender's right to confront and cross-examine adverse witnesses), or the manner in which the offender must be apprised of ODRC's decision. But given that this is a facial challenge to the Law, it cannot be said at this juncture that the Law "cannot be applied constitutionally in any circumstances." As we commented in *Stenson*, should the Law ultimately be applied in a manner that is unconstitutional, an offender would not be precluded from challenging the Law as applied. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 230, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ("If an inmate were to demonstrate that the New Policy did not in practice operate in [a constitutionally-permissible] fashion, resulting in a cognizable injury, that

19.

could be the subject of an appropriate future challenge."). *See also Eaton,* 6th Dist. Lucas No. L-21-1121 (Mayle, J., concurring).

{¶ 37} Accordingly, we find that the Reagan Tokes Law does not, on its face, violate the constitutional right to due process as it concerns the procedures for additional-term hearings. We next turn to whether the Law provides adequate notice of what conduct may trigger an additional term under the Law.

{¶ 38} R.C. 2967.271(C) provides that ODRC may rebut the presumption of release from prison after serving the minimum prison term (or on the presumptive early release date) if it determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of

this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

{¶ 39} As previously recognized in this decision, security classifications and the decision to place an offender in extended restrictive housing—triggers under R.C. 2967.271(C)(2) and (3)—are the subject of detailed sets of policies and procedures. *See, e.g.,* ODRC Procedure 53-CLS-01 and 55-SPC-02; Ohio Administrative Code 5120-9-10 and 5120-9-11.

{¶ 40} As for R.C. 2967.271(C)(1), the statute really requires ODRC to demonstrate *three* things to rebut the presumption of release: (1) the offender committed an institutional rule infraction that involves compromising security, compromising safety, causing physical harm, or threatening physical harm, *or* committed a violation of law that was not prosecuted, *and* (2) the infractions or violations demonstrate that the offender has

21.

not been rehabilitated; *and* (3) the offender's behavior while incarcerated demonstrates that he or she continues to pose a threat to society.

{¶ 41} "'[T]he first essential of due process of law' is the accused's right to fair notice of the proscribed conduct." *State v. Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, ¶ 33 (4th Dist.), quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The Ohio Revised Code provides notice of what constitutes a violation of law, while the inmate rules of conduct are enumerated in Ohio Administrative Code 5120-9-06. Detailed disciplinary procedures for rule infractions—which include provisions for challenging a claimed rule infraction and appealing an adverse decision— are set forth in Ohio Administrative Code 5120-9-08. Thus, it cannot be said that an offender lacks notice of what constitutes a rule infraction or a violation of law.

{¶ 42} As for what it means to "pose a threat to society" (R.C. 2967.271(C)(1)(b)) or what constitutes proof that an offender "has not been rehabilitated" (R.C. 2967.271(C)(1)(a)), it is true that R.C. 2967.271 does not define these terms. Nevertheless, we find that these phrases are not so vague as to render the statute facially infirm.

{¶ 43} "A facial challenge requires that the challenging party * * * show that the statute is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." (Internal quotations omitted.) *State v. Carrick*, 131 Ohio

22.

St.3d 340, 2012-Ohio-608, 965 N.E.2d 264, ¶ 15, quoting *State v. Anderson,* 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991), quoting *Coates v. Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Here, a standard *is* specified in the statute. We, therefore, find that Bothuel's facial challenge fails. Again, however, this does not preclude Bothuel from advancing an as-applied challenge should he one day be able to show "'that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.'" *Id.* at ¶ 16, quoting *State v. Lowe,* 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists,* 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting).

{¶ 44} Accordingly, we find Bothuel's first assignment of error not well-taken.

### III.    Conclusion

{¶ 45} We reject Bothuel's challenges to the constitutionality of the Reagan Tokes Law. We conclude that the Law does not violate the separation-of-powers doctrine or the right to a jury trial and does not, on its face, deprive offenders of their right to due process. We, therefore, find Bothuel's first assignment of error not well-taken.

{¶ 46} We affirm the February 14, 2020 judgment of the Lucas County Court of Common Pleas. Bothuel is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.   _____
            JUDGE
Christine E. Mayle, J.
CONCUR.        _____
            JUDGE


Gene A. Zmuda, J.    _____
CONCURS AND WRITES      JUDGE
SEPARATELY.


**ZMUDA, J.**

{¶ 47} I agree with the majority's disposition of Bothuel's first assignment of error. I write separately, because I find that the Reagan Tokes Law does not facially violate a defendant's constitutional right to due process, and thus Bothuel's first assignment of error is not well-taken, based upon the reasoning I articulated in this court's lead opinion in *State v. Eaton*, 6th Dist. Lucas No. L-21-1121. I disagree with the majority's determination that the Reagan Tokes Law creates a liberty interest akin to

probation revocation, but this disagreement does not yield a different conclusion on the

ultimate question of constitutionality in this case. Therefore, I concur.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.